John J. PLISCO, Appellant,

v.

UNION RAILROAD COMPANY,
a Corporation.

No. 16207.

United States Court of Appeals
Third Circuit.

Argued March 10, 1967.

Decided June 15, 1967.

Rehearing Denied July 14, 1967.

**16**

John J. Hickton, Pittsburgh, Pa. (McArdle, Harrington, Feeney & McLaughlin, Pittsburgh, Pa., on the brief), for appellant.

Chauncey E. Pruger, Pittsburgh, Pa. (Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, HASTIE and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

This is an action by a railroad employee against his employer for personal injuries suffered by the plaintiff when, during the course of his work, he slipped and fell on an icy slope. A jury trial resulted in a verdict and judgment for the defendant. Several months after the judgment had become final the plaintiff filed the present motion for a new trial under Rule 60(b) alleging that newly discovered evidence warranted such post judgment relief. After hearing, the trial court denied the motion. This appeal followed.

The accident occurred in freezing weather at a time when the plaintiff was assisting in rerailing a derailed engine. The snow near the engine was hard-packed and the plaintiff fell at a point where the surface was very slippery. A major issue in the case was whether the railroad had used reasonable care to provide the plaintiff a safe place to work.

The alleged newly discovered evidence was the testimony of Thomas Askey, another railroad employee but not a member of the plaintiff's crew, to the effect that before the plaintiff's accident blow-torches used by railroad employees near the derailed engine had caused a considerable melting of snow in the area. And because of the low temperature this melted snow quickly refroze, creating an icy surface.

It is arguable that this evidence that the hazardous walking and working conditions had been caused by abnormal and perhaps unnecessary conduct of railroad employees might have persuaded a jury that the railroad had not used reasonable care to provide the plaintiff a safe place in which to work. Thus, this additional evidence might have changed the result of the trial.

■■■■ But more than a showing of the potential significance of the new evidence is necessary to justify the granting of a new trial after judgment has become final. Our concern here is with extraordinary relief which should be granted only where extraordinary justifying circumstances are present. More particularly, it must appear that reasonable diligence by the movant before trial would not have brought to light the evidence which he failed to discover until after trial. Flett v. W. A. Alexander & Co., 7th Cir., 1962, 302 F.2d 321, cert. denied 371 U.S. 841, 83 S.Ct. 71, 9 L.Ed. 2d 77; Hartford Accident and Indemnity Co. v. Shaw, 8th Cir., 1959, 273 F.2d 133. In this connection this court has said that newly discovered evidence within the meaning of Rule 60(b) (2) is evidence "of which the aggrieved party was excusably ignorant" at the time of trial. Brown v. Pennsylvania R. R. Co., 3rd Cir., 1960, 282 F.2d 522, 526–527, cert. denied 365 U.S. 818, 81 S.Ct. 690, 5 L.Ed. 2d 696. Indeed, Rule 60(b) (2) is in terms geared to the provisions of Rule 59 regulating new trial motions before judgment becomes final and thus covers only that new evidence "which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)".

The above stated legal considerations are controlling here. The appellant knew

that fellow employees who were members of crews other than his own were working at the scene before he arrived and when he was injured. Indeed, he so stated in his answer to pretrial interrogatories. The appellant also testified in support of his motion for a new trial that he saw a "crew from Monongahela Junction"—the crew to which the would-be supplier of "newly discovered evidence" belonged—at the scene of the accident, but was unaware that they witnessed the accident.

But most significant of all is the affidavit of Thomas Askey, the new witness whose prospective testimony is said to justify a new trial. Beyond deposing that the icy condition was created artificially by railroad employees using blowtorches, Askey also asserted that he spoke to the appellant about the accident two or three times before the trial and that "certainly I let him know that I had witnessed the accident, and that I was on the premises * * * when it occurred." Thus the very witness whose evidence the appellant calls "newly discovered" within the meaning of Rule 60 (b) has effectively refuted that legal characterization. The appellant cannot rely upon the helpful part of the statement of his proffered witness and expect the court to disregard the adverse remainder.

We find no escape from the conclusion that, after Askey identified himself to the appellant before trial as an eye witness, reasonable diligence on the appellant's part would have included questioning Askey to discover whatever information he possessed that was relevant to the disputed claim. It follows that any deficiency in the appellant's proof at trial was the result of this lack of diligence on his part. Therefore, he is not entitled to have an adverse final judgment reopened to permit an unjustifiably tardy supplementation of his case.

The appellant also invokes the general provision of Rule 60(b) (6) authorizing relief from a final judgment for "any other reason justifying relief". However, this case presents no substantial basis for seeking relief other than the desire to supplement the record with Askey's testimony. The appellant's case is no stronger under clause (6) of Rule 60 (b) than under clause (2).

One or two additional comments seem appropriate, if to some extent repetitive, in the light of the dissenting opinion. That opinion stresses the fact that the appellant was unaware that Askey had important information about the circumstances of the accident which was unknown to the appellant. However, we think that is not the crucial point. The appellant did know that Askey was on the scene when the appellant arrived and that Askey witnessed the accident. The decisive fact is that the appellant failed to question Askey to discover what he had observed that might be helpful. It is this failure to inquire what information a known witness could supply which prevents Askey's testimony from being such newly discovered evidence as would warrant reopening a final judgment.

Finally, it is to be emphasized that this is not a motion filed within ten days after judgment. It is a request for relief filed long after judgment had become final. One who seeks such extraordinary relief from a final judgment bears a heavy burden. In the circumstances of this case the court acted well within its discretion in denying such relief.

The judgment will be affirmed.

McLAUGHLIN, Circuit Judge (dissenting).

It is conceded that the new evidence could change the trial result. It follows that the lower court seriously erred in denying plaintiff's motions because while the Court noted that " * * * plaintiff was aware another crew had been working at this scene prior to the arrival of his crew" and that "Plaintiff only called as witnesses the members of his own crew.", the Court in denying the motion relied upon the theory that plaintiff and his crew at the trial " * * * had a full and ample opportunity to describe the condition of the ground at the point where plaintiff fell." What the Court

utterly failed to take into account was that plaintiff and his witnesses thought the icy, etc. condition of the ground was natural. They had no idea that it may very well have been created artificially by the railroad's action in melting the snow which in turn froze into the resultant ice.

The trial judge considered the matter both under plaintiff's motion for a new trial on the ground that the verdict was against the weight of the evidence and under Rule 60(b), based on the newly discovered evidence. He denied the 60(b) motion squarely on his mistaken theory that the new evidence would not have produced a different result. His thought regarding this was as he stated in his opinion on the motions for a new trial:

"Plaintiff testified that he fell on ice, that it was an icy condition where he fell. The other witnesses describe the ground in much the same terms.

"In this sense the testimony of the new witness could only be cumulative. The duty of the railroad to provide a safe place to work is an affirmative non-delegable duty, and is not changed by these circumstances."

The majority opinion relies wholly upon the proposition that the new evidence could have and should have been discovered through reasonable diligence by trial time. I do not think the record justifies that finding.

Very briefly, on the afternoon of December 12, 1962, there was a derailed locomotive of defendant railroad on property of Continental Can Co., near the Monongahela Junction Yard of the railroad which is in the Pittsburgh, Pennsylvania area. The temperature at the time was twelve degrees above zero. Plaintiff was a fireman for the defendant. He and four other employees went to where the engine was to help move it. The ground around the engine was covred with shiny, packed snow and ice. Plaintiff had to go down a slope and in so doing slipped, fell and was hurt. Suit was commenced on his behalf. Plaintiff's

interrogatories to the railroad, filed April 20, 1964, had as their first question the following:

"1. State the names and addresses of all witnesses or persons who have knowledge of the accident complained of and list them as follows:

a) Witnesses who have knowledge of facts and events immediately preceding the accident;

b) Eyewitnesses to the accident;

c) Witnesses who have knowledge of facts or events immediately subsequent to the accident."

The railroad answered this giving only the names of the men with plaintiff and nothing else.

The case was tried on the understanding that the ground was covered with natural ice, etc. There was a verdict in favor of the defendant. Sometime after the trial on February 1, 1966, a report of plaintiff losing his claim appeared in the railroad newsletter. Numerous railroad employees telephoned plaintiff's attorney about this. The attorney had a meeting with those men at which time he learned that another railroad crew had been on the scene earlier and to quote him "I further learned that the icy condition which caused my client's fall was artificially created by railroad employees with the railroad's knowledge." Thomas C. Askey, a brakeman with that first crew, made an affidavit which, inter alia, told how that crew had used a flame thrower in and around the vicinity of the derailed engine to loosen it from " *  * the ice and snow on the ground which was frozen solid." He described how the instrument was operated by the men walking back and forth, etc. and that as they moved away from the melted spot it would freeze up immediately. He said this created a sheet of ice on the slope to the left of the engine about 20 by 60 feet and that was where plaintiff fell. He said that after he had seen the story in the railroad paper he called plaintiff's attorney and asked him if any of his crew had testified and that the attorney said

" * * * he did not know of these men and had not been given their names." "I then offered to give this affidavit since I felt that very important facts were missing from the trial testimony." *His affidavit does not mention one word about ever telling plaintiff he was a witness to the accident.* That story in fact comes from one Finley who describes himself as "Chief Claim Agent for the Union Railroad Company". After plaintiff's attorney filed the Askey affidavit, Finley had Askey come to his office. There he interrogated Askey for twenty-eight pages of the printed appendix, allegedly using some sort of a recording device. His main effort throughout that questioning was to have Askey say that he specifically told plaintiff he was a witness to the latter's accident. After twelve pages, Finley got around to asking "Did you ever talk to Mr. Plisco about this accident?" Askey said he did on a number of occasions that "I mentioned it to him before trial and he knew I was present." On the next page Askey said he " * * * talked with plaintiff at work twice possibly 3 times about the accident." He was interested in how plaintiff felt and sitting with him "Brought up a recollection of this event." Finley asked Askey if he had ever talked with an investigator from the office of plaintiff's attorney and Askey told him "No, sir." Finley asked "Well, did you tell him that you would be a witness for him?" Askey answered "I don't remember ever volunteering that." Finley asked "What made you volunteer in 1966? A. In 1966 Union Railroad published a Management Newsletter in which they said that. Q. Mr. Plisco had lost his case? A. Yes. Words to that effect." According to Mr. Askey, that news "seemed to have excited a lot of talk among the men." Askey talked with the representative of the Brotherhood of Locomotive Engineers and went with him to the attorney's office. As Askey said, "And that was how I came to see Mr. Hickton [plaintiff's attorney]." From Mr. Hickton, Askey found out there had been no mention of the work of the Maintenance of Way

men, the people who used the flame throwers. Askey said "And when we had talked about these things, I volunteered the information that I have in this, that he put into this affidavit which I have signed." Finley continued to try and have Askey say he categorically told him "that you were a witness in this accident?" Askey said "I thought Mr. Plisco was perfectly aware that I was there, and." "Q. But you told him? I think you told me earlier on the record you told him at least 2 or 3 times? Is that correct? A. I think I, I think I told you that, yes, sir. But I didn't come out and say, 'John, I was a witness to your accident.'" Again Askey said "But I never emphasized it because it was my assumption that he knew these things." Finley asked him questions about what the lawyer had said to him. Askey said the lawyer had told him things about the trial but he didn't remember what they were. Finley said:

"Q. Well he must have. He must have indicated to you that some testimony you had would be different than anybody else had said. Did he indicate that?

A. Yes, he did.

Q. What was that all about? What did he indicate there?

A. The fact that the mobile unit never been mentioned. The torches had never been mentioned. The frigid temperature, I think. Because he questioned me somewhat along the lines you have about this iced condition and what caused it. *The only explanation I had for it. I think the true explanation was that the torches were responsible.*" (Emphasis supplied).

Throughout all of the twenty-eight pages of questions, Finley never once asked Askey if the latter ever told plaintiff that the first railroad maintenance squad had used a flame thrower which had caused the ice on which plaintiff had slipped.

The above gives the simple, uncontradicted and in truth uncontradictable

answer to the failure to have Askey and the other first crew members at the trial. Plaintiff never had the slightest idea that they knew any more or anything different than he and his men knew. Askey makes a magnificent, straightforward showing under that long pressure badgering by his employer's chief claim agent. Askey had mistakenly assumed Plisco knew everything that he did of the conditions at the time of the accident and therefore never intruded with the special knowledge he possessed. The railroad never mentioned Askey or that first crew as witnesses or anything about the flame thrower either in the answers to interrogatories or in the defense pretrial statement. Absent' the unknown flame thrower information, Askey and the first unit would have been undoubtedly merely cumulative witnesses and of no importance. There is nothing in the record giving the slightest intimation of what now develops as the vital part of the claim on its merits. Plaintiff's attorneys are not amateurs; they are top trial lawyers. And with the railroad stating that the only witnesses were with the plaintiff, with no suggestion whatsoever of the unusual additional element of what was seemingly an ordinary snow and ice situation, there was nothing in the suit that warrants plaintiff's attorneys being characterized as so lacking in reasonable diligence as to deny a trial of this case on its plainly substantial merits. Plaintiff has been the victim of an unfortunate mischance, it is nothing else. This honest cause of action as it stands has every right to be fairly heard.

There was no finding whatsoever by the trial judge that plaintiff and his attorneys were lacking in diligence by not having Mr. Askey and his first crew associates as witnesses. The denial of the new trial as has been above quoted was solely because the judge held that the new evidence would be cumulative. As is admitted, the new evidence was not cumulative but new in all respects. It completely changed the cause of action. It showed that the active, proximate negligence which created the slippery condi-

tion and brought about plaintiff's fall was the direct, immediate responsibility of the defendant railroad. The denial of plaintiff's motion was clearly wrong as a matter of law.