## TAS INTERNATIONAL TRAVEL SERVICE, INC., Plaintiff,

v.

## PAN AMERICAN WORLD AIRWAYS, INC., Defendant.

## PAN AMERICAN WORLD AIRWAYS, INC., Plaintiff,

v.

## TAS INTERNATIONAL TRAVEL SERVICE, INC., United Travels, Ltd., Joseph Varghese, also known as K. Joseph Varghese, M.A. Simon and M. Abraham, Defendants.

Nos. 78 Civ. 175(MEL), 78 Civ. 177(MEL).

United States District Court, S.D. New York.

Dec. 13, 1982.

William D. Gallagher, New York City, for Tas Intern. Travel Service, Inc. and M.A. Simon.

Whitman & Ransom, New York City, for Pan American World Airways, Inc.; Paul M. Brown, Lawrence N. Chanen, Allen A. Hans, New York City, of Counsel.

Ralph S. Naden, New York City, for United Travels, Ltd. and Joseph Varghese.

LASKER, District Judge.

Following a jury trial which commenced February 2, 1981, TAS International Travel Service, Inc. ("TAS") and United Travels, Ltd. ("United") (together, the "Agencies") obtained a verdict against Pan American World Airways, Inc. ("Pan Am") which found Pan Am liable to the Agencies in the sum of $1,500,000 for unpaid commissions on Pan Am tickets sold by the Agencies.[1]

At trial, one of the matters at issue was whether the Agencies engaged in rebating practices—*i.e.*, the selling of tickets at rates lower than the tariff rates Pan Am had on file with the Civil Aeronautics Board. Had the Agencies engaged in rebating, the amounts to which they would have been entitled for Pan Am ticket sales would have been substantially smaller than those awarded, since damages were calculated by applying the Agencies' commission rate of 29% to the total face value of tickets sold for Pan Am.[2] Joseph Varghese, the president and sole stockholder of United, testified that United did not rebate (T.T. 247–48)

Pan Am's instant motion under Fed.R. Civ.Pr. 60(b)(3) seeks vacatur of the judgment or, in the alternative, a new trial, on the ground that Varghese testified falsely when he denied that United rebated Pan Am tickets. In support of the motion Pan Am has offered the affidavits of two individuals, Douglas Trimmer and Barry Lemley, to whom Varghese has allegedly made statements indicating his involvement in rebating practices during periods relevant to his trial testimony; depositions and affidavits of various travel agents who assert that rebating is a prevalent practice among agencies catering to the Indian travel market which TAS and United serve; the affidavit of G. Bal, a travel agent to whom United allegedly sold Pan Am ticket stock at a 17—18% discount; and various forms of documentary evidence.

In order to prevail on its motion, Pan Am must demonstrate its contentions by clear and convincing evidence. *Nederlandsche Handel-Maatschappij, N.V. v. Jay Emm, Inc.,* 301 F.2d 114 (2d Cir.1962); 7 Moore, Federal Practice ¶ 60.24[5], at 293. Because Varghese's affidavit directly denies that he made the statements alleged by Trimmer and Lemley and that he testified falsely at trial, the material presently offered by Pan Am does not meet this stan-

1. The damage awards were later reduced by the Court to $472,000 for TAS and $712,000 for United. The trial and verdict also included other matters not directly in issue here.

2. Rebating is also a violation of International Air Transport Association ("IATA") regulations.

dard. Nevertheless, the Trimmer and Lemley affidavits, which allege direct knowledge that Varghese engaged in rebating, make a threshold showing adequate to warrant an evidentiary hearing. Because the issue before the court depends upon the credibility of Trimmer, Lemley and Varghese, their personal appearance before the court is indispensable. *See Phillips v. Crown Central Petroleum Corp.*, 556 F.2d 702, 705 (4th Cir.1977).

\*　　\*　　\*

Varghese, Simon and the Agencies argue vigorously that relief on the grounds asserted by Pan Am is foreclosed because Pan Am, in the exercise of due diligence, could have presented at trial all of the evidence now offered in support of its motion. They particularly object to the affidavit of Lemley, who during the period relevant to this action was Pan Am's Managing Director in Canada. Lemley was the Pan Am official with whom Varghese made the initial contacts that led to the Agencies' commission agreement with Pan Am. The Agencies argue that, in light of Pan Am's failure to call Lemley to testify at trial, to make Lemley available to be called by the Agencies at trial as requested[3] and to present Lemley's allegations until some ten months after Pan Am filed the instant motion, Pan Am is barred from relying on Lemley's allegations in a motion to reopen the judgment.

While the parties will be free to explore at the hearing the reasons for Lemley's belated appearance in this litigation, Pan Am appears to be correct in its contention that the due diligence standard applicable to motions under Fed.R.Civ.Pr. 60(b)(2) (dealing with motions based on newly discovered evidence) is inapplicable to motions to vacate the judgment or for a new trial on the basis of alleged perjurious testimony under Rule 60(b)(3).[4] Motions under 60(b)(1), (2) and (3) must be made within one year of the judgment; this requirement Pan Am has met. Rule 60(b)(2), in addition, requires that, if newly discovered evidence is the basis for the motion, the evidence be such "which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." This requirement is conspicuously absent from the text of 60(b)(3). We have discovered no case in which a motion timely filed under 60(b)(3) which presented evidence of perjury was held barred because of the movant's lack of diligence in discovering the evidence.[5]

The agencies rely on *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699 (2d Cir.), *cert. denied*, 409 U.S. 883, 93 S.Ct. 173, 34

---

**3.** The Agencies notified Pan Am's trial counsel, prior to trial, that Lemley was among the Pan Am personnel whom the Agencies intended to subpoena if Pan Am did not intend to call them. According to the Agencies, Pan Am's counsel's reply was that Lemley would be out of the country and unavailable to testify.

**4.** *See Associated Discount Corp. v. Goldman*, 52 F.R.D. 37 (W.D.Pa.1971) ("[movant's] lack of diligence in discovering the new evidence which she now proffers [is] overcome in our view by the proffer of evidence to show that . . . plaintiff participated in some degree in the fraud or misrepresentation." *Id.* at 40).

**5.** The Agencies cite *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 43 S.Ct. 458, 67 L.Ed. 719 (1923), which states that "to justify setting aside a decree for fraud whether extrinsic or intrinsic, it must appear that the fraud charged really prevented the party complaining from making a full and fair defense." *Id.* at 421, 43 S.Ct. at 463. That case, decided before adoption of the Federal Rules of Civil Procedure, held only that fraud was not established when a party suing on a patent failed to point out to his opponent evidence that would have weakened his claim to the patent, at least when the patent-holder took no steps to prevent his opponent from finding and availing himself of the evidence. Nor does *Atchison, Topeka & Santa Fe Railway v. Barrett*, 246 F.2d 847 (9th Cir.1957), which cites the above-quoted statement from *Toledo Scales*, shed significant light on the issue. *Atchison, Topeka & Santa Fe*, which upheld the district court's finding that no fraud had occurred warranting relief under 60(b)(3), also states that Rule 60(b)

"is remedial and should be liberally construed. Where perjury has played some part in influencing the court or jury to render a judgment, the effect of the perjury will not be weighed on a motion to set aside the judgment."

*Id.* at 849. *Accord, Peacock Records, Inc. v. Checker Records, Inc.*, 365 F.2d 145, 147 (7th Cir.1966), *cert. denied*, 386 U.S. 1003, 87 S.Ct. 707, 17 L.Ed.2d 542 (1967).

L.Ed.2d 139 (1972), for the proposition that a contradicting witness is not sufficient to warrant vacatur of the judgment on grounds of perjury. This reliance is misplaced, since *Serzysko* held only that "fraud on the court" cannot be proven in that manner. Fraud on the court is a separate ground for vacatur of a judgment; it concerns matters such as bribery of court officers or fraudulent conduct by attorneys, and is typically defined as

> "only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication."

7 Moore, *supra,* ¶ 60.33, at 515; *Serzysko, supra,* 461 F.2d 702. Pan Am does not claim that fraud upon the court is involved in this case: hence, the limitations enunciated in *Serzysko* are not meaningful here.

When a final judgment is attacked on grounds that it was procured by false testimony, the court must balance competing concerns for the fairness and integrity of judicial determinations, on the one hand, and the policy favoring finality in litigation on the other. In cases where the motion has been brought within one year of judgment as required by Rule 60(b)(3), the better course is to resolve this conflict in favor of assuring the fairness and integrity of judgments, at least to the extent of requiring a hearing when an adequate threshold showing of false testimony by a party witness has been made.

At this stage of the protracted litigation between the parties, the easiest way for Varghese to establish his contention that Pan Am's charges are groundless is for him persuasively and credibly to tell his story in open court. The testimony at the hearing will be limited, on Pan Am's side, to that of Trimmer and Lemley, since only their affidavits allege direct statements by Varghese that are in conflict with his trial testimony. Varghese of course may testify for the Agencies; Simon, although he has not been directly accused of giving false testimony, may testify if he so desires.

It is so ordered.