**UNITED STATES of America, Plaintiff,**

**v.**

**ALL RIGHT, TITLE AND INTEREST IN PROPERTY AND PREMISES KNOWN AS 710 MAIN STREET, PEEKSKILL, NEW YORK, and Business Interests Therein Known as Bunch's Place and the Video Arcade, Defendant.**

**No. 88 Civ. 7509 (IBC).**

United States District Court, S.D. New York.

Dec. 12, 1990.

**122**

Otto Obermaier, U.S. Atty., S.D.N.Y., New York City (Timothy MacFall, Sp. Asst. U.S. Atty., of counsel), for U.S.

Hersh & Kornfeld, Peekskill, N.Y. (Leon Kornfeld, of counsel), for claimant Jesse James Bunch.

## MEMORANDUM AND ORDER

IRVING BEN COOPER, District Judge.

The United States of America (the "government") commenced this civil *in rem* forfeiture action on October 21, 1988 by filing a verified complaint against the premises and real property located at 710 Main Street, Peekskill, New York (the "property"). Jesse James Bunch filed the only claim to the property in opposition to the forfeiture action. In an opinion dated August 13, 1990, we dismissed the government's complaint and ordered the property returned to Mr. Bunch ("the August 13 Opinion"). 744 F.Supp. 510 (S.D.N.Y.1990). The government timely moved for 1) reargument of the August 13 Opinion pursuant to Rule 3(j) of the Civil Rules for the United States District Courts for the Southern

and Eastern Districts of New York ("Local Rule 3(j)"); 2) a new trial pursuant to Fed. R.Civ.P. 59(b); and 3) a stay of enforcement of the judgment filed August 17, 1990 ("the August 17 Judgment"), pursuant to Fed.R.Civ.P. 62(b), pending the disposition of the other two motions, or pending appeal. Mr. Bunch opposed the motions.

On September 24, 1990 we granted the government's application for the stay of enforcement of the August 17 Judgment, and on September 25 we granted the motion for reargument; oral arguments were heard on October 18, 1990. We shall address each motion separately hereinbelow.

The facts of this case are set forth at length in the August 13 Opinion; familiarity with them is assumed.

## DISCUSSION

*Motion to Vacate the August 17 Judgment*

██ The government contends that consideration of the Second Circuit opinion in *United States v. 141st Street Corp.* *("141st Street Corp.")*, 911 F.2d 870 (2d Cir.1990), rendered four days after our August 13 Opinion, would change our disposition of the instant matter. In *141st Street Corp.*, our Circuit Court addressed the "lack of consent" issue in its discussion of the "innocent owner" defense contained in 21 U.S.C. § 881(a)(7) (1988); in so doing, the Court applied a standard to determine lack of consent which varies from the standard we applied in the August 13 Opinion. Having found that the strict standards for a motion for reargument had been met, *see Ruiz v. Comm'r of Dept. of Transp. of City of New York*, 687 F.Supp. 888, 890 (S.D.N.Y.1988); *B.A.M. Brokerage Corp. v. New York*, 724 F.Supp. 146, 147 (S.D.N.Y. 1989); *H. Sand & Co., Inc. v. Airtemp Corp.*, 743 F.Supp. 279 (S.D.N.Y.1990) (Cooper, J.), we granted, on September 25, 1990, the government's motion for reargument.[1]

---

1. Mr. Bunch argues that our consideration of *141st Street Corp.* would amount to a retroactive application of the Second Circuit's standard. However, under Local Rule 3(j), it is appropri-
ate for us to consider that subsequently-decided appeal because it directly calls into question the standard we applied. *See, e.g., Brignoli v. Balch Hardy & Scheinman, Inc.*, 735 F.Supp. 100 (S.D.

In *141st Street Corp.*, the claimant, the corporation's president and principal shareholder, acted as the managing agent of the defendant property, and his uncle, the superintendent, also performed functions associated with a managing agent. 911 F.2d at 873. Police had received complaints of narcotics trafficking in connection with 24 of the building's 41 apartments. Crack vials and broken pipes designed for smoking crack were observed in the hallways and common areas, and "lookouts" and "steerers" were observed in front of and in the lobby of the building. Several police officers called the claimant on at least eight different occasions, leaving messages each time. Police also left at least three messages with the claimant's uncle, and one police officer wrote a letter to the claimant wherein he expressed his desire to discuss with the claimant the narcotics activity at the building. The claimant did not respond to any of the attempts by the police to contact him. The police thereafter chose not to contact the claimant because they felt that " 'the owner was possibly aware of [the narcotics trafficking], if not working directly with the narcotics traffickers in th[e] building.' " *Id.*

Additionally, police discovered an alarm system, wired from a box on the roof to several apartments in the building, which was designed to alert drug dealers to police presence at or near the building, and narcotics purchases were made by undercover police in 17 of the building's 41 apartments. *Id.*

When the police raided the building a first time, executing search warrants for eight apartments, they arrested twenty-six people and recovered narcotics, money and weapons. Two weeks later, the police executed search warrants for nine additional apartments, wherein they arrested another twelve people and recovered more contraband. At the same time, law enforcement officers executed a seizure warrant for the entire building. *Id.*

N.Y.1990), *motion granted,* 739 F.Supp. 936 (S.D.N.Y.1990); *Morser v. AT & T Information*

The evidence adduced at trial in *141st Street Corp.* established that the claimant took no affirmative steps to curb the drug activity until after the police first raided the property; moreover, the only action he took after the first raid was to instruct his uncle not to accept rent from those tenants who had been arrested. *Id.* at 879. "The jury concluded either that Realty Corp. knew of the narcotics activity before [the first raid] and took no steps to stop it, or that Realty Corp.'s response after learning of the raid was inadequate." *Id.* at 879–80.

■ In contrast to the claimant in *141st Street Corp.*, Mr. Bunch introduced evidence at trial demonstrating that he took steps to terminate the problem with drugs at the property. We found that although he knew of the drug activity, he made a number of attempts to keep it from the property. Based on the credible evidence admitted at trial, we concluded that Mr. Bunch, in an attempt to rid the property of illegal drug activity:

> fired two bartenders after they were arrested on separate occasions on drug-related charges;
>
> locked the restrooms and restricted access thereto to patrons who requested the key from the bartender;
>
> ultimately closed the restrooms entirely and only reopened them upon orders from the Department of Health;
>
> initiated a policy of allowing one person in the restroom at a time, for one minute per person, when the restrooms were reopened;
>
> closed off the rear portion of the restaurant area to limit access to the unsupervised areas of the bar;
>
> placed an electromagnetic lock on the front door of the bar to limit access to the bar (although he also testified that he stopped using it because it was a nuisance);
>
> installed signs to warn patrons that they were subject to photograph and search (Mr. Bunch testified that he installed the signs as a scare tactic);

*Systems,* 715 F.Supp. 516 (S.D.N.Y.1989).

restricted the bar's daily operating hours;

personally supervised the area around the property from a position near a second-story window;

wrote a letter (which received no reply) to the Commissioner of the Peekskill Police Department, asking for cooperation in ridding the property of drugs;

closed the third floor residential apartments at a loss of rental income to himself;

asked persons who were not patrons to leave the bar; and

made anonymous phone calls to the police to inform them of illegal activity at and around the property.

744 F.Supp. at 513–18.

We note that Mr. Bunch undertook the above measures on his own initiative. He did not have a complete high school education (Claim of Jesse James Bunch In Opposition to the Forfeiture Action, Nov. 1, 1988, Ex. 1), a law enforcement background, or even the advice of law enforcement agencies to guide him in determining appropriate actions to take.

*Standard Applied*

The Second Circuit, in affirming the jury's conclusion in *141st Street Corp.* that the claimant consented to the illegal narcotics activity at the property, defined "lack of consent" as doing "all that reasonably could be expected to prevent the illegal activity once [the claimant] learn[s] of it[.]" 911 F.2d at 879. Conversely, the court defined "consent" as the claimant's failure to do all that he reasonably could be expected to do. *Id.*

In the August 13 Opinion we applied a different standard. We concluded that Mr. Bunch merely needed to show that he took some action toward ridding the property of the illicit drug activity. 744 F.Supp. at 524. We found that the facts compelled our finding, based on a fair preponderance of the credible evidence, that he did take affirma-

tive steps to stop the proscribed use of his property. We therefore concluded that he did not consent to the illegal drug activity that was occurring at the bar and arcade. *Id.* at 524–25.

The government now contends that pursuant to the new standard set in *141st Street Corp.*, Mr. Bunch did not do all that could have reasonably been expected to show lack of consent, and it sets forth several examples in support of its position. First, the government argues that with regard to the bar, Mr. Bunch could have hired a second employee, such as a "bouncer" or doorman, to screen patrons to insure that suspected drug dealers were prohibited entry, or to monitor the bar to make sure that no drugs were being used in areas that the bartender could not effectively monitor. (R.Tr. 4) [2] Next, the government contends that Mr. Bunch's refusal to use the electromagnetic "buzzer" lock (Ex. 29; Tr. 252–3, 269, 275–6) [3], installed to screen patrons, was unreasonable. (R.Tr. 5). The government further maintains that Mr. Bunch could reasonably have been expected to make his own presence known in the bar by personally supervising there instead of monitoring the street scene in front of the property from his position near the second-story window. (R.Tr. 4).

With respect to the arcade, the government argues that Mr. Bunch could have employed a number of reasonable measures to assist the police in curbing illegal drug activity, including asking his tenant to remove obstructions from the windows so police could monitor the activities in the arcade (R.Tr. 7–8); speaking with his tenant about his suspicions of drug activity (R.Tr. 8); and closing or renting the arcade to another business which "would have been less conducive to that kind of heavy pedestrian traffic." (*Id*). Finally, the government argues that, at the very least, Mr. Bunch should have inspected the arcade to determine whether there might

---

**2.** The letters "R.Tr." followed by a number indicate pages of the official transcript of the reargument.

**3.** The letters "Ex." followed by a number indicate exhibits received in evidence at trial. The letters "Tr." followed by a number indicate pages of the official trial transcript.

have been illicit activities occurring therein. (R.Tr. 7).

In response, Mr. Bunch contends that the measures he took constitute all he could have reasonably been expected to do under the circumstances in the bar and arcade. He maintains that the magnetic lock system in the bar was a nuisance both to him and the police when they wanted to enter. 744 F.Supp. at 516. He further argues that his attempts to keep drug activity away from the property were negated by police instructing undesirables to enter. (Ex. A; Tr. 252). Regarding the arcade, he argues that the constant presence of the police in front of the arcade caused him to believe they would "do their job." (R.Tr. 15).

Upon consideration of Mr. Bunch's actions, and in light of the standard set forth in *141st Street Corp.*, we find that, given the strengths and limitations of Mr. Bunch, he did all that he could have reasonably been expected to do to keep the illegal drug activity from his property once he learned of it. Consequently, our August 13 Opinion and the August 17 Judgment shall remain unaltered.

■ The taking of property by the government is a serious action, subject to stringent constitutional scrutiny. *United States v. Premises and Real Property at 4492 South Livonia Road, Livonia, N.Y.*, 889 F.2d 1258, 1264 (2d Cir.1989), *reh. denied*, 897 F.2d 659 (2d Cir.1990); *United States v. Riverbend Farms, Inc.*, 847 F.2d 553 (9th Cir.1988). Consequently, a property owner is not required to take heroic or vigilante measures to rid his or her property of narcotics activity. *United States v. Certain Real Property and Premises Known As 171–02 Liberty Ave., Queens, N.Y.*, 710 F.Supp. 46, 51 (E.D.N.Y.1989). Indeed, encouraging such a standard would result in the dangerous precedent of making property owners in drug-infested neighborhoods into substitute police forces. Rather, a property owner need only take all reasonable steps to accomplish that result. *141st Street Corp.*, 911 F.2d at 879. In accordance with the spirit of the law, we interpret this requirement as a subjective standard; the question is not what an objective judge looking in from the outside would consider to constitute all reasonable measures, since such a reading could result in the imposition of what many would consider heroic measures.

Pursuant to our interpretation, we are precluded from concluding that Mr. Bunch did not take all reasonable measures to rid the property of drug activity. Viewed from the perspective of one with the strengths and limitations of Mr. Bunch, who was trying to eke out an income from a business located in a drug-infested area that posed great risks to the safety of him and his family, we find that the actions he took, reflective of his fears, concerns and limited familiarity with crime prevention, fulfilled his legal obligation. The fact that he was unsuccessful in resolving the drug problem (as were the well-trained police who patrolled the area) should not be interpreted as his consent to that activity. 744 F.Supp. at 523; *United States v. Parcel of Real Property Known as 6109 Grubb Road, Millcreek Tp., Erie County, Pa.*, 886 F.2d 618, 626 (3d Cir.1989).

Moreover, the facts of the instant case are clearly distinguishable from those presented in *141st Street Corp.* There, the property owner engaged in reprehensible activity that promoted the use of the property for narcotics trafficking. He not only avoided taking measures to rid the property of the drugs, but his actions, and inaction, led police to suspect that he actually participated in the continuation of the narcotics enterprise. Quite to the contrary, no such allegation has been launched at Mr. Bunch.

Under the circumstances, we are compelled to deny the government's motion to vacate our August 13 Opinion.

*Motion for New Trial—Fed.R.Civ.P. 59(b)*

In its motion for a new trial, the government seeks to introduce as newly discovered evidence a letter from the City of Peekskill to Mr. Bunch, dated January 16, 1987 ("the letter"), advising Mr. Bunch that his use of the third floor apartments violated several sections of the City Code, and ordering Mr. Bunch to "CEASE AND DE-

SIST" such unlawful use. Declaration of Timothy MacFall, 1–2. The government contends that the letter directly contradicts the testimony by Mr. Bunch at trial that he closed the third floor apartments voluntarily; therefore, the government argues, it renders his testimony "patently false and misleading." Memorandum of Law In Support of the Government's Motions To Reargue, for a New Trial and to Stay Enforcement of the Judgment ("Government Memo"), at 13. The government claims that the introduction of the letter presents sufficient grounds for us to reopen the trial and take additional testimony regarding the closing of the third floor apartments. (*Id.* at 11–15).

Mr. Bunch opposes the motion on three grounds: first, that the government has not shown that the evidence could not have been discovered earlier with due diligence; second, that the evidence merely serves to impeach his trial testimony; and, third, that the evidence is not such that would probably produce a different result upon a retrial. Memorandum of Law Upon Behalf of Claimant, Jesse James Bunch, In Opposition to the Plaintiff's Motions to Reargue, for a New Trial, and for a Stay of Enforcement Pending Appeal ("Claimant's Memo"), 5–7.

The government relies on three cases to support its position that the due diligence requirement may be overlooked if the newly discovered evidence shows untruthfulness of a material portion of the testimony of a witness at trial. Government Memo, 13–15.[4] Those cases, however, discuss the standard for motions made pursuant to Rule 60(b)(3), which is a specific application for a new trial based on fraud or perjury. The government does not so specifically move, nor does it cite any other cases from within our own Circuit that address the

appropriateness of overlooking the due diligence requirement.[5]

■■■ "The same standard applies to motions on the ground of newly discovered evidence whether they are made under Rule 59 or 60(b)(2), and decisions construing Rule 59 in this context are authoritative in construing Rule 60(b)(2)." 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2859 at 182 (1973 & 1990 Supp.). *See also Strobl v. New York Mercantile Exchange*, 590 F.Supp. 875, 878 n. 1 (S.D.N.Y.1984), *aff'd*, 768 F.2d 22 (2d Cir.), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985); *Peacock v. Board of School Comm'rs of City of Indianapolis*, 721 F.2d 210 (7th Cir.1983). Accordingly,

"[i]n order to reopen the trial upon the ground of newly discovered evidence, the Court must be satisfied that the [evidence] (1) is in fact newly discovered, i.e., discovered since the trial; (2) could not with due diligence have been discovered earlier; (3) is not merely cumulative or impeaching; (4) is material to the issues; and (5) is such that upon a retrial it would probably produce a different result.

*Gemveto Jewelry Co., Inc. v. Jeff Cooper, Inc.*, 613 F.Supp. 1052, 1058 (S.D.N.Y.1985) (Weinfeld, J.) (citations omitted), *vacated on other grounds*, 800 F.2d 256 (Fed.Cir. 1986). The motion for a new trial on the grounds of newly discovered evidence is an extraordinary motion and requirements of the rule must be strictly met. *In re Tuchrello*, 43 B.R. 93, 98 (Bkrtcy.W.D.N.Y. 1984) (citing *Ag Pro, Inc. v. Sakraida*, 512 F.2d 141, 143 (5th Cir.1975), *rev'd on other grounds*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976)).

"In order to succeed on a motion pursuant to Rule 60(b)(2), [and, therefore, under Rule 59,] the movant must present evi-

4. *Krock v. Electric Motor & Repair Co., Inc.*, 339 F.2d 73 (1st Cir.1964); *Associates Discount Corp. v. Goldman*, 52 F.R.D. 37 (W.D.Pa.1971); *Tas Int'l Travel Service, Inc. v. Pan American World Airways, Inc.*, 96 F.R.D. 205 (S.D.N.Y.1982).

5. Indeed, in *Tas Int'l Travel,* Judge Lasker explicitly described a major difference between a motion for new trial brought under Rule

60(b)(2) and one brought pursuant to Rule 60(b)(3): 60(b)(2) has an additional requirement that the evidence "be such 'which with due diligence could not have been discovered in time to move for a new trial under Rule 59(b).' This requirement is conspicuously absent from the text of 60(b)(3)." 96 F.R.D. at 207 (quoting language from Rule 60(b)(2)).

dence that is 'truly newly discovered or . . . could not have been found by due diligence.'" *United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir. 1983) (quoting *Westerly Electronics Corp. v. Walter Kidde & Co.*, 367 F.2d 269, 270 (2d Cir.1966)).

■ The government fails to show why it could not have found the letter had it exercised due diligence. Indeed, the government fails to describe what attempts, if any, were made to secure the letter at an earlier date. The case was filed in October, 1988—more than two years ago. The letter was written in February, 1987, nearly four years ago. It has been in the possession of the City of Peekskill, and, as a public document, it should not be considered newly discovered evidence. *See Scutieri v. Paige*, 808 F.2d 785 (11th Cir.1987). Additionally, the government deposed Mr. Bunch eight months before trial; it had ample time to investigate the responses of Mr. Bunch had it exercised due diligence.

A narrow exception to [the] rule [prohibiting newly discovered evidence that would have been found with due diligence] has been recognized: a new trial may be ordered to prevent a grave miscarriage of justice even though the 'newly discovered evidence' supporting that order would have been available to the moving party at trial had that party exercised proper diligence. *Ferrel[l] v. Trailmobile, Inc.*, 223 F.2d 697, 698 (5th Cir.1955). *See also Samuels v. Health and Hospitals Corp.*, 591 F.2d 195, 199 (2d Cir.1979). This exception, however, has been restricted to cases in which the evidence is practically conclusive. *Niedland v. United States*, 338 F.2d 254, 260 (3d Cir.1964).

*Ope Shipping, Ltd. v. Underwriters at Lloyds*, 100 F.R.D. 428, 432 (S.D.N.Y.1983). *See also Music Research, Inc. v. Vanguard Recording Soc., Inc.*, 547 F.2d 192, 196 (2d Cir.1976).

In the instant case, ordering a new trial will not prevent a grave miscarriage of justice. Additionally, the evidence sought to be introduced is not conclusive on the issue of Mr. Bunch's consent or lack thereof to the illegal drug activity at the property. At best, it tends to impeach the testimony of Mr. Bunch on the limited scope of his motivation for closing the third floor apartments. Even if he was required to close the third floor, thus reducing the number of measures that he took on his own initiative, his lack of consent was nonetheless exemplified by his other actions. Thus, no exception applies to the instant matter that would cause us to suspend the rule that requires a showing of due diligence when a new trial is sought on the basis of newly discovered evidence. We note, too, that the letter is not material to the issue of whether Mr. Bunch did all he reasonably could be expected to do to rid the property of illegal drug use.

Finally, the letter is not sufficient evidence for us to conclude that a different result would be reached if a new trial were to be granted. Whether Mr. Bunch closed the third floor apartments on his own volition or pursuant to the order of the city is not "practically conclusive" of the issue of his consent. *See Ope Shipping*, 100 F.R.D. at 432.

In short, the government has discovered evidence that was in existence at the time of trial which it could have discovered through the exercise of due diligence. Moreover, the nature of the letter would not justify the relaxation of the due diligence standard because a new trial is not needed to prevent a miscarriage of justice. Accordingly, we deny the government's motion for a new trial.

## CONCLUSION

On the trial record, the oral reargument record and the law applicable thereto, we are constrained to, and do, deny the government's motion for a new trial and order that the August 13 Opinion and the August 17 Judgment shall remain unaltered. The government's application for a stay of enforcement of the August 17 Judgment pending appeal is granted.

SO ORDERED.