Andrew CHANG, Plaintiff,

v.

CITY OF ALBANY, City of Albany Police Department, and Ralph Tashjian, Individually and as Police Officer of the City of Albany, Defendants.

No. 91–CV–1028.

United States District Court, N.D. New York.

Aug. 30, 1993.

[REDACTED]

Maynard, O'Connor & Smith (Richard R. Maguire, of counsel), Albany, NY, for plaintiff.

Sullivan, Rehfuss, Cunningham & Brennan (Stephen J. Rehfuss, of counsel), Albany, NY, for defendants.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

## I. BACKGROUND AND FACTS

Plaintiff Andrew Chang ("Chang" or "plaintiff") seeks judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), or, in the alternative, a new trial pursuant to Fed. R.Civ.P. 59(a). Plaintiff brought suit against the City of Albany ("City"), the Albany Police Department ("Police Department") and Albany Police Officer Ralph Tashjian, alleging that defendants used excessive force in arresting him for disorderly conduct on September 18, 1990. Plaintiff sought to recover for state law battery and under 42 U.S.C. § 1983 for alleged violations of his constitutional rights under the Fourth Amendment. After a six-day trial,[1] both parties moved for a directed verdict. The motions were denied. The jury rendered its verdict on April 22, 1993, finding no cause of action in favor of defendants on both causes of action. Plaintiff then moved pursuant to Rules 50(b) and 59(a) and the court denied both motions.

While the details surrounding Chang's arrest were heavily disputed at trial, the following facts were not in contention.[2]

The incident occurred on the evening of September 18, 1990, outside the Knickerbocker Arena in Albany, New York where a rock and roll concert was being held. City

police officers were in the process of arresting an individual for disorderly conduct when Chang verbally intervened. After a verbal exchange with police, Chang took flight down Beaver Street with several police officers in pursuit on foot. Plaintiff was apprehended around the corner, placed under arrest, and ultimately pleaded guilty to disorderly conduct. It was during this arrest that excessive force was allegedly first used against plaintiff.[3] (Pltf.Mem. 05/03/93 at 1; Rehfuss Aff. ¶¶ 9–10).

The disputed facts principally concerned the demeanor and actions of defendants and Chang, both prior to and during the arrest; and specifically, whether the police used reasonable force under the circumstances in apprehending and arresting him. Chang first testified to the allegedly abusive conduct of police as they arrested the first individual for disorderly conduct, prompting Chang to verbally intervene (Pltf.Mem. 05/03/93 at 1). Fearing that the police would retaliate against him, Chang began to run (Pltf.Mem. 05/03/93 at 1). As many as six police officers chased Chang down the street and around a corner where he was arrested (Pltf.Mem. 05/03/93 at 1). Both Chang and a corroborating witness testified that Chang was beaten, kicked, and otherwise assaulted during his arrest (Maguire Aff. ¶¶ 15–18).

Not surprisingly, defendants' witnesses offered a different version of the events preceding Chang's arrest. They testified that the police were being harassed by a loud, disorderly, and verbally abusive Chang who was approached by a police officer and asked to leave (Rehfuss Aff. ¶ 9). At this point, according to defendants' witnesses, Chang attempted to strike the officer, fled down the street in an attempt to evade arrest and was finally apprehended around the corner (Rehfuss Aff. ¶ 9). They also testified that the arresting police officers employed only that degree of force reasonably required under the circumstances (Rehfuss Aff. ¶¶ 9–10).

1. Trial commenced on April 14, 1993 and the parties rested on April 21, 1993.

2. The facts as set forth herein are culled from plaintiff's Memorandum of Law, defendants' Memorandum of Law, the Affidavit of plaintiff's attorney, Richard R. Maguire, Esq., and the Affidavit of defendants' attorney, Stephen J. Rehfuss,

Esq. (hereafter "Pltf.Mem. 05/03/93", "Def.Mem. 05/17/93", "Maguire Aff." and "Rehfuss Aff.").

3. Plaintiff claimed that he was also subjected to unreasonable force following the arrest, when he was in police custody (Maguire Aff. ¶ 31).

The jury, of course, was instructed to consider the credibility of the witnesses (Def.Mem. 05/17/93 at 3). Defendants' witnesses were mainly City police officers who participated in or witnessed Chang's arrest (Maguire Aff. ¶¶ 20–22). By contrast, the majority of witnesses testifying on behalf of plaintiff were young concert-goers who were asked to leave (or were ejected from) the Knickerbocker arena after an altercation inside, and two of whom were subsequently arrested for disorderly conduct (Maguire Aff. ¶¶ 16–24).[4] Additionally, Katherine Mills ("Mills"), plaintiff's only witness who actually observed the arrest and alleged beating, was unable to testify in person (Maguire Aff. ¶¶ 81–82). Her testimony was read into the record from a deposition transcript (Pltf.Mem. 05/03/93 at p. 1–2). During summation, defense counsel seriously questioned the absence of Mills, commenting that "[p]lanes fly out of the state of California." (Maguire Aff. ¶¶ 86–87). After plaintiff's objection to such remarks, the court struck them from the record and issued curative instructions to the jury (Maguire Aff. ¶ 87).

On the evening of April 21, 1993, the day on which jury deliberations began, plaintiff's counsel received a phone call from a Janie Hayner ("J. Hayner"), a 45 year-old woman who had read an article about the trial that day in the *Albany Times Union*. She informed plaintiff's attorney that she and her husband Robert ("R. Hayner") were parked outside the arena on the night of September 18, 1990 and had witnessed the events preceding Chang's arrest (J. Hayner Aff. ¶¶ 3–16; R. Hayner Aff. ¶¶ 3–14). The Hayners, however, did not actually observe Chang's apprehension and arrest, inasmuch as he fled around the corner out of their view (J. Hayner Aff. ¶¶ 15–18; R. Hayner Aff. ¶¶ 13–15). Plaintiff's counsel affirmed that these witnesses were previously unknown, despite due diligence expended to find potential evidence, both before and during trial (Maguire Aff. ¶¶ 50–54).

For all practical purposes, the Hayners appear to be disinterested, independent and otherwise credible witnesses. They are willing to testify that they first observed the officers using force on the unrelated arrestee, (J. Hayner Aff. ¶¶ 6–9; R. Hayner Aff. ¶¶ 6–8), and that they believed the City police officers were the aggressors in the subsequent arrest of Chang, becoming belligerent and furiously chasing Chang down after he intervened in the unrelated arrest (J. Hayner Aff. ¶¶ 11–16; R. Hayner Aff. ¶¶ 9–14). Mrs. Hayner would testify that she feared for the safety of both the first arrestee and Chang (J. Hayner Aff. ¶ 19). Finally, the Hayners would offer testimony to refute defendants' contention that Chang struck or attempted to strike any City police officer (J. Hayner Aff. ¶ 13; R. Hayner Aff. ¶ 11).

Plaintiff's present motion for judgment as a matter of law or, in the alternative, a new trial, is predicated upon (1) the discovery of this new evidence since the time of trial, as well as (2) the improper and purportedly prejudicial remarks made by defense counsel relative to the absence of one of plaintiff's witnesses.

For the reasons that follow, plaintiff's motions are denied.

## II. DISCUSSION

### A. Judgment as a Matter of Law

Plaintiff initially moves post trial for renewed judgment as a matter of law pursuant to Fed.R.Civ.P. Rule 50(b).[5] In so moving, plaintiff asks this court to issue a judgment in his favor, notwithstanding the jury's verdict.

---

4. The record is unclear as to whether several of plaintiff's witnesses left the arena voluntarily or were escorted out by security personnel (Maguire Aff. ¶ 57; Rehfuss Aff. ¶ 8).

5. Rule 50(b) provides in pertinent part:

   Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied ..., the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed ... not later than 10 days after entry of judgment.... If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law. Fed.R.Civ.P. 50(b) (Moore 1993).

The well established standard for granting a motion for judgment n.o.v. is whether "the evidence, viewed in the light most favorable to the non-movants without considering credibility or weight, reasonably permits *only* a conclusion in the movants' favor." *Jund v. Town of Hempstead*, 941 F.2d 1271, 1290 (2d Cir.1991) (quoting *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 573 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982) (emphasis added)). Judgment n.o.v. is proper when:

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fairminded men could not arrive at a jury verdict against him.

*Jund*, 941 F.2d at 1290 (quoting *Mattivi v. South African Marine Corp.*, 618 F.2d 163, 168 (2d Cir.1980)).

■ At trial, both parties presented evidence in support of their contentions which was properly weighed by the jury. The jury determined that the weight and sufficiency of all evidence lay with defendants and accordingly ruled in their favor. This evidence, when viewed in the light most favorable to the non-movants here, clearly does not permit a conclusion only in plaintiff's favor. There is neither an absence of evidence which fails to support, nor an overwhelming amount of evidence to counter, the jury's verdict for the defendants, and plaintiff has failed to offer any meaningful argument to the contrary. Accordingly, the court finds that plaintiff is not entitled to judgment as a matter of law.

### B. New Trial

#### 1. Improper and Prejudicial Remarks

Plaintiff contends that a new trial is warranted on the ground that remarks made by defense counsel were improper and unduly prejudicial. The court disagrees.

■ "In arguing to a jury, counsel must properly have some latitude, so long as prejudice does not appear." *Schwartz v. Northwest Airlines, Inc.*, 275 F.2d 846, 846 (2d Cir.1960). Quite obviously, "not all misconduct of counsel taints a verdict to such a degree as to warrant a new trial." *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 540 (2d Cir.1992) (citing *Matthews v. CTI Container Transp. Int'l Inc.*, 871 F.2d 270, 278 (2d Cir.1989)). "Some misconduct is *de minimis* in the context of the entire trial, and some is promptly dealt with by the trial court's rulings and curative instructions." *Pappas*, 963 F.2d at 540 (emphasis in original). When ruling on a motion for new trial based upon attorney misconduct, the trial court has broad discretion in determining whether "counsel's conduct [has] created undue prejudice or passion which played upon the sympathy of the jury." *Strobl v. New York Mercantile Exchange*, 582 F.Supp. 770, 780 (S.D.N.Y.), *aff'd*, 768 F.2d 22 (2d Cir.), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985). The relevant inquiry in assessing whether a jury has been unduly prejudiced is whether there is a "reasonable probability" that the jury's verdict was influenced by the improper conduct of counsel. *Draper v. Airco, Inc.*, 580 F.2d 91, 97 (3d Cir.1978).

■ In the case at bar, plaintiff maintains that defense counsel's closing reference to the absence of witness Mills was an improper and extraneous remark which unduly prejudiced the jury. Plaintiff notes that during deliberation, the jury requested a readback of Mills' testimony, signifying that such testimony was crucial to the jury's verdict. Specifically, plaintiff asserts that the improper remark casted doubt upon Mills' credibility, and that there is a reasonable probability that this influenced the jury's verdict.

Defense counsel, on the other hand, contends that the comment was neither extraneous nor improper and did not prejudice the jury or influence its verdict.

The court need not rule again on the impropriety or extraneousness of defense counsel's remark. Suffice it to say that the court deemed it improper at the time of trial. However, the court immediately had the remark stricken from the record and promptly issued curative instructions to the jury. These remedial measures sufficiently re-

moved any prejudicial the remarks may have had on the jury. Thus, there is no reasonable probability that defense counsel's remark, albeit improper, influenced the jury's verdict for defendants.

## 2. Newly Discovered Evidence

Finally, plaintiff contends that a new trial is warranted based on the new evidence which was discovered since the close of trial. Again, the court disagrees.

▇▇▇ Motions for a new trial based upon the post-trial discovery of new evidence are generally disfavored. *Zink Communications v. Elliott,* No. 90–4297, 1990 WL 170469, *1, 1990 U.S.Dist. LEXIS 14205, at *1–2 (S.D.N.Y. Oct. 24, 1990) (citing *Mittlieder v. Chicago & N.W. Ry. Co.,* 441 F.2d 52, 56 (8th Cir.1971)). Furthermore, although such a motion is considered at the discretion of the trial court, that discretion is "limited by a number of well-established prerequisites." *Zink,* 1990 WL 170469 at *1, 1990 U.S.Dist. LEXIS 14205, at *2 (citations omitted). A party must show that (1) the evidence was discovered since the trial; (2) the movant used due diligence in attempting to find the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence is such that it will probably produce a different result upon a new trial. *U.S. v. All Right, Title And Interest In Property And Premises Known As 710 Main Street,* 753 F.Supp. 121, 126 (S.D.N.Y.1990); *Ope Shipping, Ltd. v. Underwriters at Lloyds,* 100 F.R.D. 428, 432 (S.D.N.Y.1983) (citing and quoting *McCullough Tool Co. v. Well Surveys, Inc.,* 343 F.2d 381, 410 (10th Cir.1965)).

The court addresses the foregoing requirements *seriatim.*

---

**6.** The court notes, however, that it is troubled by the suggestion that defendants may have known of the Hayners' existence prior to the commencement of trial. In her affidavit, Janie Hayner states that after she witnessed the events of September 18, 1990, she placed a phone call to the Albany Police Department to voice her concern about the conduct of the police officers and the safety of the man (presumably Chang) they were chasing down Beaver Street (J. Hayner Aff. ¶ 20).

## (a) *Evidence Discovered Since Trial, Due Diligence and Materiality*

▇▇▇ In considering a motion for new trial based on newly discovered evidence, the court must be satisfied that the evidence was in fact " 'truly newly discovered or . . . could not have been found by due diligence.' " *United States v. Potamkin Cadillac Corp.,* 697 F.2d 491, 493 (2d Cir.), *cert. denied,* 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983) (quoting *Westerly Electronics Corp. v. Walter Kidde & Co.,* 367 F.2d 269, 270 (2d Cir.1966)). The evidence must also be material or relevant to the issues of the case. *710 Main Street,* 753 F.Supp. at 126.

▇▇▇ In the instant case, the court is satisfied that the new evidence was discovered since the close of trial. It is undisputed that it was only after jury deliberations had begun that plaintiff's counsel first became aware of the Hayners' existence. *Campbell v. American Foreign S.S. Corp.,* 116 F.2d 926, 928 (2d Cir.), *cert. denied,* 313 U.S. 573, 61 S.Ct. 959, 85 L.Ed. 1530 (1941) (newly discovered evidence is "evidence of facts in existence at the time of trial of which the party seeking a new trial was justifiably ignorant."). Likewise, the court is satisfied that plaintiff exercised due diligence in attempting to find any and all evidence pertaining to the events of September 18, 1990, both prior to and during the course of trial. This is simply a case where the witnesses were unknown to the parties and the pending action unknown to the potential witnesses.[6] There is no practical way plaintiff could have identified the Hayners as potential witnesses. Finally, the court finds that the newly discovered evidence in the instant case is material. The new witnesses would offer testimony which would tend to prove or disprove, or at least clarify, issues which are central to the case.

Plaintiff questions the Police Department's subsequent failure to identify the Hayners as potential witnesses (Maguire Aff. ¶¶ 48, 52). While failure to divulge these witnesses does not in and of itself warrant a new trial, since the evidence is not likely to change the outcome, such conduct, if clearly established, could warrant sanctions. Plaintiff has nevertheless failed to pursue this argument on the present motion.

Nevertheless, the newly discovered evidence cannot support plaintiff's motion for new trial insofar as it fails to meet the remaining requirements.

#### (b) *Cumulative Evidence*

"Cumulative new evidence which goes only to the weight and credibility of existing evidence is not a sufficient basis for the extraordinary remedy of a new trial." *Strobl v. New York Mercantile Exchange,* 590 F.Supp. 875, 880 n. 4 (S.D.N.Y.1984), *aff'd,* 768 F.2d 22 (2d Cir.), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985).

The newly discovered witnesses in the instant case would offer testimony concerning the events leading up to Chang's arrest: the preceding unrelated arrest, Chang's intervention in that arrest, the chase that ensued, and the demeanor of both plaintiff and defendants. At trial, plaintiff presented three witnesses who testified about these same events. Thus, the Hayners' testimony could only corroborate, strengthen or confirm the testimony already given by plaintiff's witnesses. Consequently, the new evidence is merely cumulative, and therefore does not warrant a new trial.

#### (c) *Impeaching Evidence*

It is also settled that "[e]vidence ... whose only effect is to contradict or attack the credibility of witnesses will not ordinarily warrant a new trial, in the absence of very unusual or extraordinary circumstances." *Zink,* 1990 WL 170469, at *4, 1990 U.S.Dist. LEXIS 14205, at *10 (quoting 6A Moore's Federal Practice (2d ed. 1989) at 59–104–105 (footnotes omitted)). Thus, "[t]o the extent the newly discovered evidence contradicts ... testimony, it impeaches it, and consequently cannot support a new trial motion." *Id.*

At trial, defendants presented several witnesses who testified about what occurred prior to Chang's arrest. Several witnesses testified that before Chang was arrested, he had been loud and abusive towards the police, interfered in police business, and ultimately attempted to strike an officer who had asked him to leave.

As noted above, the new witnesses' testimony concerns the very same events preceding Chang's arrest. Perhaps the most compelling testimony that would be offered by the new witness concerns the demeanor and the actions of the parties. That is, the Hayners have apparently offered to testify that the police were abusive to both the unrelated arrestee and Chang before his arrest (J. Hayner Aff. ¶¶ 6–10, 12; R. Hayner Aff. ¶¶ 6–10), that Chang did not strike or attempt to strike any officer at any time, and that they believed that police began to chase Chang in retaliation for Chang's intervention (J. Hayner Aff. ¶¶ 10–16; R. Hayner Aff. ¶¶ 8–14).

This is a classic example of impeachment in that the testimony would merely contradict, or challenge the credibility of, the testimony of defendants' witnesses concerning the demeanor and actions of the parties prior to Chang's arrest. *United States v. On Lee,* 201 F.2d 722, 723–24 (2d Cir.), *cert. denied,* 345 U.S. 936, 73 S.Ct. 798, 97 L.Ed. 1364 (1953) ("testimony would at best serve to only impeach"). Therefore, this newly discovered evidence cannot support a motion for a new trial.

#### (d) *Evidence Likely to Produce a Different Result*

Finally, and perhaps most importantly, this is not the sort of evidence which would probably produce a different result.

In considering the effect newly discovered evidence might have on the outcome of a trial, the proper inquiry is whether "the ... evidence [makes] a prima facie showing that a different result should have been reached." *Unarco Indus., Inc. v. Evans Prods. Co.,* 403 F.2d 638, 639 (7th Cir.1968); *see also Thomas v. Nuss,* 353 F.2d 257, 259 (6th Cir.1965) (new evidence must be "of such nature to indicate that if added to other proof already in the case a different result would be probable."); *Ope Shipping, Ltd.,* 100 F.R.D. at 432 (citing cases). "[M]ore than a showing of the potential significance of the new evidence is necessary to justify the granting of a new trial after judgment has become final." *Plisco v. Union Railroad Co.,* 379 F.2d 15, 16 (3d Cir.), *cert. denied,* 389 U.S. 1014, 88 S.Ct. 590, 19 L.Ed.2d 660 (1967).

462

In the case at bar, assuming arguendo that the newly discovered evidence was neither merely cumulative nor impeaching, it is not likely that it would change the outcome of the trial. The events preceding Chang's arrest, including the purported justification therefor, were but one set of factors in the jury's verdict for the defendants. Although the new witnesses' testimony has potential significance, it does not, when added with other proof in the case, indicate that there would be a verdict for the plaintiff. Thus, although the new testimony might lend a help hand to plaintiff in a new trial, it would not do so to such a degree to save plaintiff from an unfavorable verdict.

In sum, plaintiff has not proffered any grounds which warrant a new trial. The jury's verdict will stand.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that plaintiff's motion for judgment as a matter of law is **denied;** and it is further

**ORDERED,** that plaintiff's motion for a new trial is **denied.**

