UNITED STATES of America,
Plaintiff–Appellant,

v.

SIXTY ACRES IN ETOWAH COUNTY,
Evelyn Charlene Ellis,
Defendants–Appellees.

No. 90–7382.

United States Court of Appeals,
Eleventh Circuit.

May 6, 1991.

Frank W. Donaldson, U.S. Atty., Robert P. Barclift, Linda S. Trippe, Asst. U.S. Attys., Birmingham, Ala., for plaintiff-appellant.

David C. Johnson and Leila Hirayama, Johnson & Cory, P.C., Birmingham, Ala., for Sixty Acres.

Before HATCHETT and DUBINA, Circuit Judges, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

The United States, as appellant, challenges the district court's dismissal with prejudice of the government's complaint for forfeiture; the district court instead granted the appellee's claim to the defendant real property, Sixty Acres in Etowah County, Alabama. The district court construed the "innocent owner" provision of 21 U.S.C. § 881(a)(7) to defeat forfeiture; the court found that the appellee had *knowledge* of the prohibited activity, but that she never consented to it. We agree with appellant that the appellee consented to the prohibited activity within the meaning of 21 U.S.C. § 881(a)(7); we therefore reverse.

## FACTS

On January 31, 1989, the Federal Bureau of Investigation (F.B.I.), Alabama Bureau of Investigation and the Etowah County Narcotics Task Force conducted a "buy-bust" of Hubert Owen Ellis, on the defendant real property to which his wife, Evelyn Charlene Ellis, (the claimant in this case), held title. Phillip Tarvin, a confidential informant for the Etowah County Narcotics Task Force, provided the Sheriff's Deputy, Todd Entrekin, with a list of persons "with whom he had previous drug dealings." The list included Mr. Ellis, and Tarvin and Entrekin agreed to target Mr. Ellis in this investigation.

Mr. Tarvin contacted Mr. Ellis at the home that Mr. Ellis shared with his wife and negotiated terms for the purchase of marijuana. Several days later, Mr. Tarvin, wearing a listening device, arrived at the Ellis home. After a brief conversation, Mr. Tarvin followed Mr. Ellis to the rear of the house where Mr. Ellis retrieved a garbage bag located in some weeds "eight to ten yards" from the house. Mr. Ellis pulled six plastic bags from the garbage bag and advised Mr. Tarvin that they contained "three pounds of pot." Mr. Tarvin asked Mr. Ellis if he might sample the marijuana,

and then proclaimed, "This smells like good stuff." These words, a pre-arranged signal, prompted the agents monitoring the listening device to advance. Mr. Ellis discerned the agents' approach, and fled from the back of the house. Mr. Ellis tried to pass the marijuana to Mr. Tarvin, but Mr. Tarvin refused it, and Mr. Ellis then carried it with him. The agents did not locate Mr. Ellis that evening, but found two bags of marijuana (with a combined weight of 15.1 ounces), located 81 and 100 feet, respectively, from the rear of the house.

An investigator from the Etowah County District Attorney's Office testified that, as the first to enter the house, he discovered the claimant, Mrs. Ellis, in her bedroom and asked her if she knew where her husband was hiding. Mrs. Ellis told him that she didn't know, but that "he was here a few minutes ago and a car pulled up and he went out."

## PROCEEDINGS IN THE DISTRICT COURT

On May 4, 1989, Mr. Ellis pled guilty to possession with intent to distribute Schedule I controlled substances; the United States District Court for the Northern District of Alabama then sentenced him to ten months in prison.

On January 5, 1990, 727 F.Supp. 1414, the district court entered an order forfeiting the defendant real property to the United States, pursuant to 21 U.S.C. § 881(a)(7). That statute states in pertinent part:

(a) The following shall be subject to forfeiture to the United States and no property rights shall exist in them ...

(7) All real property, including any right, title, and interest ... in the whole of any lot or tract of land ... which is used ... to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, *except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that*

*owner to have been committed or omitted without the knowledge or consent of that owner.* (emphasis supplied).

In a memorandum opinion, the District Court defined the relevant issue as whether Mrs. Ellis had shown, by a preponderance of the evidence, that she never consented to her husband's activities:

The question, then, is not whether forfeiture can be avoided by Mrs. Ellis by proving the lesser alternative proposition, namely, that she did not "consent" to her husband's illegal activities, but whether she did, in fact, prove by a preponderance of the evidence an absence of "consent" by her to those activities.

In response to this Forfeiture Order, the claimant filed a Motion for New Trial or in the Alternative, Motion for Relief of Judgment Due to Additional Evidence. In response, the district court vacated its previous Order of Forfeiture and reopened the case to receive evidence and hear testimony on the issue of claimant's consent, or lack of consent, regarding her husband's drug activities.

The district court then conducted a bench trial on that issue, and vacated its previous Order of Forfeiture, dismissed the United States' complaint for forfeiture, and granted the claim of Evelyn Charlene Ellis. 736 F.Supp. 1579.

This appeal followed.

## DISCUSSION

The appellant now challenges the district court's finding that the claimant never consented to her husband's drug activity.[1] The appellant contends that the undisputed record shows that the claimant consented to her husband's drug activity within the meaning of the forfeiture act. Claimant, on the other hand, asserts that she feared her husband and "remained silent only because to speak up would bring greater and more fearful consequences to her than the forfeiture of her property."

---

**1.** Appellant also raises other issues which, in view of our resolution of this one, we need not reach.

As we have noted, the district court first entered a forfeiture order, but then reopened the case to receive evidence on the issue of claimant's consent. During a short bench trial, the district court elicited the following information concerning Mrs. Ellis:

(1) Shortly after marrying Mr. Ellis, Mrs. Ellis discovered that her husband had murdered (by beating to death) his previous wife.

(2) When Mrs. Ellis once inadvertently allowed the pigs to escape, Mr. Ellis, in a rage, choked her.

(3) At one point Mr. Ellis threatened to kill Mrs. Ellis. He told one witness, in fact, that if Mrs. Ellis ever left him, he would have her "done away with." According to that witness, "if [Mrs. Ellis] had reported [her husband] to federal authorities about drug dealing, she wouldn't be here today."

(4) Mr. Ellis owned several guns, including a semi-automatic rifle. He also drank as much as a half a case of beer a day.

(5) Mr. Ellis served time in prison for the murder of his first wife, and, according to the district court, the claimant appeared on his behalf at his parole hearing only "because she thought she had to." Mrs. Ellis' mother, in fact, succumbed to one of Mr. Ellis' threats by executing a deed when he demanded it.

(6) One government witness described Mr. Ellis as a "madman." One of his stepdaughters described Mr. Ellis as "the devil." Another stepdaughter personally testified that she and her sister were as frightened of Mr. Ellis as their mother was.

From these findings the district court concluded "that Mrs. Ellis was physically and mentally incapable of stopping Mr. Ellis' illegal drug activities or of reporting him to the authorities." The court, in fact, approved one description of Mrs. Ellis as her husband's "slave."

■ The evidence amply supports the district court's finding that Mr. Ellis' presence induced fear, anxiety and fierce discomfort in the members of his household.

Mrs. Ellis' *generalized* fear of persecution from her husband, however, does not allow her to escape the consequences, (in this case, forfeiture), for her consent to his illegal acts. We may not substitute, as the district court appeared to do, a vaguely-defined theory of "battered wife syndrome" for the showing of duress courts have always required to excuse otherwise criminal conduct.

In the past we have defined duress as follows:

> To establish a defense of duress [one] must show that he performed [or, in this case, consented to] the unlawful act because (1) he was under an immediate threat of death or serious bodily injury, (2) he had a well grounded fear that the threat would be carried out, and (3) he had no reasonable opportunity to escape.

*United States v. Blanco*, 754 F.2d 940, 943 (11th Cir.1985). We have refused to approve the duress defense in cases in which a defendant "[has] numerous reasonable opportunities to inform the police of" his predicament. *United States v. Lee*, 694 F.2d 649, 654 (11th Cir.1983), *cert. den. sub nom. Grindrod v. United States*, 460 U.S. 1086, 103 S.Ct. 1779, 76 L.Ed.2d 350 (1983).

Other circuits have embellished the law of duress. The Second Circuit, for example, has noted that "evidence of a mere 'generalized fear' does not satisfy the requirement of a well-founded fear of impending death or serious bodily harm." *United States v. Villegas*, 899 F.2d 1324, 1344 (2d Cir.1990), *cert. den.* —— U.S. ——, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990). The Ninth Circuit has refused to apply a duress defense where "there were times of inactivity" within a conspiracy. *United States v. Jennell*, 749 F.2d 1302, 1306 (9th Cir.1984), *cert. den.* 474 U.S. 837, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985). It similarly refused to apply the defense when it found that a defendant had "passed up many opportunities to escape." *United States v. Karr*, 742 F.2d 493, 497 (9th Cir.1984).

■ In short, as one commentator has noted, a general concern that a coconspira-

tor might retaliate does not establish the duress defense:

> The requirement of immediacy of the threat is a rigorous one; [sic] and it is clear that fear of *future* bodily harm to one's self or to others will not suffice. In order that the danger may be viewed as imminent and impending, it is ordinarily necessary to show that the coercing party was present. Moreover, the apprehension of immediate danger must continue during the whole time the crime is committed. Finally, if the accused had a reasonable opportunity to avoid committing the illegal act without subjecting himself to the threatened harm, or subsequently ignored a reasonable opportunity to escape the source of the compulsion, the defense of duress is no longer available.

D. Lunde and T. Wilson, *Brainwashing as a Defense to Criminal Liability: Patty Hearst Revisited*, 13 Crim.L.Bul. 341, 354–355 (1977) (emphasis in original). Our review of the evidence presented at the district court's second hearing convinces us that Mrs. Ellis' apprehension and fright, although genuine and profound, did not excuse her conduct on the grounds of duress.

In our view, circumstances justify a duress defense only when the coercive party threatens *immediate* harm which the coerced party cannot reasonably escape. The evidence at the hearing, however, showed only that Mrs. Ellis feared her husband. This *generalized* fear provokes our sympathy, but it cannot provoke the application of a legal standard whose essential elements are absent. Nothing in the record before us suggests that Mr. Ellis threatened immediate retaliation to his wife if she refused to cooperate in the drug scheme which caused his arrest. Everything in the record before us suggests that Mrs. Ellis had ample opportunity to flee or to contact law enforcement agents regarding her husband's activities. We therefore must hold that, on these facts, Mrs. Ellis cannot utilize the defense of duress to justify her consent to her husband's conduct. No other defense would excuse that consent.[2]

## CONCLUSION

Because of our resolution of this issue, we need not consider appellant's other contentions. We therefore REVERSE the judgment of the district court.

**REVERSED.**

**2.** The claimant refers us to *United States v. Premises Known as 171–02 Liberty Avenue*, 710 F.Supp. 46, 51 (E.D.N.Y.1989), in which a district court concluded that a claimant could "not be regarded as having 'consented' to illegal activities simply because he declined to take heroic personal risks in the war on drugs." In *Liberty Avenue*, however, the district court found that the police were pressuring the claimant "to do what they could not do themselves." 710 F.Supp. at 51. In that case, moreover, the claimant actually cooperated with police by "pressing criminal trespassing charges against persons found on the property, and by permitting the police to tear down fences and steel doors installed on the property by drug dealers." *Id.* at 50.

We should also note that the Second Circuit apparently renounced the district court's reasoning in *Liberty Avenue* in *United States v. 141st Street Corp. by Hersh*, 911 F.2d 870 (2d Cir.1990). In *Hersh*, the Second Circuit defined "consent" as the "failure to take all reasonable steps to prevent illicit use of premises once one acquires knowledge of that use ..." and then noted that the district court in *Liberty Avenue* had rejected that standard. 911 F.2d at 879.

At any rate, even were we to accept the district court's language in *Liberty Avenue*, Mrs. Ellis clearly cannot demonstrate the cooperative relationship with law enforcement agents that the claimant demonstrated in that case. Although we do not require claimants to work alongside these agents in their efforts to combat drug dealers, we insist that claimants under no *immediate* threat of reprisal either communicate their knowledge to police, or attempt to remove themselves from the scene of illegal activity.