**UNITED STATES of America, Plaintiff,**

v.

**ONE PARCEL PROPERTY LOCATED AT 3855 SOUTH APRIL STREET, MONTGOMERY, MONTGOMERY COUNTY, ALABAMA, With All Appurtenances and Improvements Thereon, Defendant.**

**Civ. A. No. 92–T–395–N.**

United States District Court,
M.D. Alabama, N.D.

July 20, 1992.

On Motion for Stay of Execution
of Judgment July 29, 1992.

934

James E. Wilson, Jasper, Ala., U.S. Atty., for the U.S.

John Harmon, Montgomery, Ala.,

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

In this action, plaintiff United States of America seeks forfeiture of defendant property, a residence which it alleges was used to facilitate the sale of narcotics. 21 U.S.C.A. § 881(a)(7). Claimant Gussie Gantt, the record owner of the defendant property located in Montgomery County, Alabama, has filed a claim and contests forfeiture, claiming to be an innocent owner. Based on the evidence presented at a nonjury trial held on June 29, 1992, the court finds in favor of Gantt.

### I.

Gantt, a 69 year-old widow, has lived at 3855 April Street since 1972.[1] Living with Gantt are two of her ten children, Wesley Gantt and Blanche McCreel, and two grandchildren. According to the police, the property has been associated with drug activity for many years; Gantt and the other residents indicate that they have been aware of drug activity in the street in front of their house since January 1991.

---

1. Since the seizure of her house in April 1992 Gantt has moved elsewhere.

In October 1991, Captain Larry Armstead of the Narcotics and Intelligence Bureau of the Montgomery Police Department ordered an investigation of 3855 April Street, in part because of the large number of complaints the department received about the property. The surveillance for the investigation was conducted primarily by Officer B.J. McCullough of the Narcotics and Intelligence Bureau. McCullough set up a video camera across the street from 3855 April Street in order to record the activity in front of the house. From this vantage point, McCullough could observe part of the front yard of 3855 April Street, part of the side yard, a portion of the driveway, and the street area in front of the house. He could also monitor the movement of traffic along the street as cars parked or pulled over to negotiate drug transactions with the group of suspects invariably clustered around the driveway of 3855 April Street. His vision of much of the yard and of the house itself was obscured by trees.

As part of the investigation, the Bureau arranged for confidential informants to purchase drugs from the suspects in the area in front of 3855 April Street. These transactions were recorded on videotape, as were numerous other unstaged drug deals conducted on the street in front of the house, in the driveway, and near the bushes in the front yard. On at least two occasions, one of the suspects walked to the side of the house and reached into the branches of a tree to retrieve small packets, presumably containing narcotics, that had been secreted there. At other times, the camera records the defendants moving into the yard in the direction of the house and returning moments later. The investigation lasted six months and culminated in the arrest of 18 suspects. As a result of these arrests, 17 defendants were convicted or pled guilty to various drug charges.

Although some of the defendants were related to Gantt, no one living at 3855 April Street was charged with any offense.

Gantt herself does not appear on the videotape and McCullough testified that he never observed Gantt take any part in the criminal activity. In fact, during this period Gantt and her son placed several calls to the police department complaining about the people gathered in front of their house.[2] Gantt kept her front door locked much of the time in an effort to prevent dealers from running inside upon the arrival of the police. Gantt's daughter Blanche McCreel posted a "No Trespassing" sign on the tree near the house; the sign was later ripped down.

During the course of the investigation, Armstead met with Gantt on three separate occasions. The first time he visited the property, in November 1991, Armstead observed several suspects run into the house upon his arrival. At that time, he gave Gantt his name and phone number at the Narcotics Bureau and instructed her to call him if any more trouble arose.

Armstead visited the house again in late December 1991. He spoke with Gantt after making an arrest in front of Gantt's property and chasing several suspects into the house. He explained to Gantt that her calls to the police department were of limited use because the officers responding to those calls arrived in marked vehicles that were easily identified by the suspects. He reiterated that she should call him directly, at the number he had given her, should anything else occur. Armstead also warned Gantt during this visit that if she did not take steps to prevent the continued use of her property by drug dealers she would risk forfeiture of her home. He suggested that she keep her front door bolted so that suspects could not run into her home when the police arrived. Gantt attempted to call Armstead at the number he had given her but was unsuccessful.

Armstead's third visit occurred in February 1992. This time, as earlier, he followed several suspects who ran back into Gantt's house. Immediately inside the doorway,

---

2. The Gantts were not the only ones who complained about the presence of drug dealers near 3855 April Street. The government introduced the incident reports from 23 different calls placed since January 1991, out of a total of more than 100 complaints received about the property during that time.

agents recovered three pieces of crack cocaine lying on the floor which had been dropped by one of the suspects who fled through the house. Armstead asked Gantt to sign out warrants for trespassing against these suspects but she refused.

## II.

The United States seeks forfeiture of Gantt's house under 21 U.S.C.A. § 881(a)(7). This section allows the government to obtain legal title to "all property, including any right, title and interest in ... any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used in any manner or part, to commit, or to facilitate the commission of a violation of this title punishable by more than one year's imprisonment."[3] The government filed its forfeiture complaint against the 3855 April Street property in March 1992 and the following month the United States Marshal Service seized the property pursuant to a warrant for arrest *in rem*. In May 1992 Gantt filed an answer and claim against the house.[4]

In forfeiture actions under § 881(a)(7), the government bears the initial burden of establishing "probable cause to believe that a substantial connection exists between the property to be forfeited and the exchange of a controlled substance." *United States v. Real Property and Residence*, 921 F.2d 1551, 1555 (11th Cir.1991) (upholding forfeiture of property,

driveway portion of which "served as the planned site of ten kilogram cocaine delivery"). *Accord United States v. Approximately 50 Acres of Real Property*, 920 F.2d 900, 902–03 (11th Cir.1991) (per curiam) ("property used to negotiate and plan an essential component of a specific drug transaction that actually took place").[5] *See also United States v. Sixty Acres in Etowah County*, 930 F.2d 857, 858–59 (11th Cir.1991); *United States v. Real Property at 5000 Palmetto Dr.*, 928 F.2d 373, 375 (11th Cir.1991). "Probable cause" is defined as "reasonable ground for belief of guilt supported by less than prima facie proof but more than suspicion." *United States v. One Single Family Residence*, 933 F.2d 976, 979 (11th Cir.1991).

In this case, the government has offered the videotape, testimony of the investigating officers, and the seventeen convictions as evidence that numerous drug transactions took place in front of the property and on the driveway. The videotape reveals that several of the suspects involved in these transactions repeatedly walked in and out of the front yard of 3855 April Street. Drugs exchanged hands in the driveway. In addition, the suspects occasionally made use of a tree at the side of the house as a storage site.[6] Such proof sufficiently establishes a "substantial connection" between the property and illegal activity and thus satisfies the government's probable cause burden. *See United States*

---

3. The possession or distribution of cocaine is punishable by more than one year's imprisonment. *See* 21 U.S.C.A. § 841.

4. Gantt, who has a sixth-grade education, did not initially understand the nature of the forfeiture proceedings and did not seek advice of counsel until after the seizure of her home. She then requested and was granted an extension of time to file her claim.

5. There is some suggestion in both these opinions that a lesser standard than "substantial connection" should apply in actions under § 881(a)(7). *See Real Property and Residence*, 921 F.2d at 1556 ("sufficient nexus" test); *Approximately 50 Acres of Real Property*, 920 F.2d at 902 ("real property had 'more than an incidental or fortuitous connection' to the crime") (quotation omitted). However, the Eleventh Circuit in each case found it unnecessary to resolve ultimately this issue because it conclud-

ed that the government had demonstrated probable cause under a substantial connection test. *See Real Property and Residence*, 921 F.2d at 1556; *Approximately 50 Acres of Real Property*, 920 F.2d at 903. Because this court reaches the same determination as to the government's probable cause showing with respect to Gantt's house, it too need not address whether the government may satisfy its burden with a showing of a connection between the property and narcotics transactions that is short of "substantial."

6. While the suspects' use of this tree substantiates the connection between illegal activity and the property generally, it also suggests that the suspects did not have easy access to Gantt's house itself which, if available to them, clearly would have provided a safer storage space.

*v. Real Property and Residence*, 921 F.2d at 1555; *Approximately 50 Acres of Real Property*, 920 F.2d at 903. The fact that Gantt herself was not involved in any of these transactions is irrelevant to the issue of whether the government has shown a substantial connection between her property and the sale of narcotics.

■ Once the government demonstrates that probable cause exists, the burden of proof in a civil forfeiture proceeding shifts to the claimant to establish by a preponderance of the evidence that the property is not subject to forfeiture. *United States v. One Single Family Residence*, 933 F.2d at 979. "The claimant can meet this burden in one of two ways: (1) by rebutting the government's evidence" that the property was used to facilitate illegal narcotics activities; or "(2) by showing that the claimant is an 'innocent owner' who did not know of the property's connection with drug sales." *Id.; see also United States v. A Single Family Residence*, 803 F.2d 625, 629–30 (11th Cir.1986). The innocent owner defense is set forth in § 881(a)(7), which provides that "no property shall be forfeited ... by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of the owner." [7] In this circuit, a claimant can avoid forfeiture as an "innocent owner" by proving *either* ignorance of the illegal activity *or* that the activity occurred without her consent. *United States v. One Parcel of Real Estate*, 963 F.2d 1496, 1503 (11th Cir.1992).

Gantt has not rebutted the government's evidence that the property was used to facilitate drug activities, nor does she deny that she was aware that drug transactions regularly occurred in the area in front of her house.[8] Gantt does contend, however, that she is an "innocent owner" because she did not consent to these activities.

■ The Eleventh Circuit recently addressed the meaning of "consent" for the purposes of establishing an innocent owner defense under § 881(a)(7). In *United States v. One Parcel of Real Estate*, 963 F.2d 1496, 1505 (11th Cir.1992), the court adopted the same definition of "consent" it has applied to similar defenses raised under § 881(a)(6)'s "innocent owner" provision and under the due process clause of the Constitution. Borrowing language first employed by the Supreme Court in *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 686, 94 S.Ct. 2080, 2094–95, 40 L.Ed.2d 452 (1974), the Eleventh Circuit held that an owner may avoid forfeiture if she can prove that she took "all reasonable steps" to prevent the illicit use of her property. *United States v. One Parcel of Real Estate*, 963 F.2d at 1505. The court explained the application of this standard as follows:

> "The reasonable efforts criteria can be satisfied by contacting and cooperating with law enforcement authorities.... 'Although we do not require claimants to work alongside [law enforcement] agents in their effort to combat drug dealers, we insist that claimants under no immediate threat of reprisal either communicate their knowledge to police, or attempt to remove themselves from the scene of illegal activity.'"

*Id.* at 1506 (quoting *United States v. Sixty Acres in Etowah County*, 930 F.2d 857, 861 n. 2 (11th Cir.1991)). The court emphasized that "the *Calero* standard does not require that the claimant make all efforts[;]

---

**7.** The overall structure of proof in these cases is based on 19 U.S.C.A. § 1615, as incorporated by 21 U.S.C.A. § 881(d). *United States v. Twenty (20) Cashier's Checks*, 897 F.2d 1567, 1568 (11th Cir.1990). Section 1615 provides that "the burden of proof shall lie upon [the] claimant.... *Provided,* That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court."

**8.** In her testimony, Gantt suggested that although she was aware of the drug activity in

front of her house, she did not know of any illegal activity that occurred on her property. At other points, however, Gantt admitted that she had seen suspects run into her yard and through her house. Moreover, Gantt's daughter testified that she posted a "No Trespassing" sign on the property, which would have been unnecessary had all drug activity been confined to the street and sidewalk area. The court therefore finds that Gantt was not ignorant of the suspects' use of her property.

[s]he need merely make all reasonable efforts." *Id.*

Gantt took several steps to discourage drug dealing on her property. She forbade those of her children and grandchildren involved in drugs from living in her home. She and her son repeatedly called the police department to alert the department to drug activity in front of the house and to request assistance. Gantt's daughter posted a "No Trespassing" sign on the property, and Gantt attempted to keep her front door locked to prevent suspects from running into her house to avoid the police. Gantt also attempted to call Armstead at the number he left but was unable to reach him. She therefore continued to call the police department with her complaints.

The government accepts much of Gantt's characterization of events but asserts that these actions do not establish that she took all reasonable steps. The government relies primarily on three alleged omissions: (1) Gantt's unwillingness to swear out warrants for the arrest of any of the suspects; (2) Gantt's failure to contact Armstead at the telephone number that he gave her; and (3) Gantt's failure to prevent suspects from evading the police by keeping the deadbolt on the front door drawn at all times. As to the second alleged omission, the court finds that Gantt did contact Armstead but was unable to reach him. The court therefore turns to the other alleged omissions: Gantt's refusal to swear out arrest warrants, and her failure to keep the deadbolt drawn at all times.

■ In deciding whether a claimant has taken all reasonable steps, the court views the facts in light of the particular claimant's individual situation and personal limitations. *United States v. All Right, Title & Interest in Property Known as 710 Main St.,* 753 F.Supp. 121, 125 (S.D.N.Y.1990). Gantt is an elderly woman with a sixth-grade education. She shares her house with several of her children and grandchildren. Gantt's efforts to keep her front door locked at all times were hindered by her grandchildren, who used the front door to come and go from their home during the day. In light of these circumstances, it would not have been reasonable to require that Gantt keep the bolt drawn across the front door during the day. Gantt took reasonable steps by keeping the door locked as much as possible.

■ The court is similarly unpersuaded by Gantt's failure to sign arrest warrants. Gantt testified, and the videotape confirms, that for the most part the suspects congregated in front of her property, not on it. When Gantt asked the police what she could do, she was told that she could not do anything if the suspects were not on her property. At trial, McCullough acknowledged that Gantt could not have signed a warrant for either trespassing or harassment unless the subjects were either trespassing on her property or harassing her. The court agrees that Gantt would have been of more assistance had she been willing to bring criminal charges against the suspect, albeit for the rather minor offense of trespassing; however, the court does not find this omission crucial. The law does not require a property owner to take all possible steps to prevent the illicit use of her property as long as the owner takes all reasonable steps.[9] *United States v. All Right, Title & Interest in Property Known as 710 Main St.,* 753 F.Supp. at 125.

The court is convinced that Gantt wanted the drug activity in front of her home stopped and that, although she declined to get involved to the extent of taking out trespassing warrants, she did take reasonable steps to achieve this end, including frequently contacting the police, evicting from her home those of her children who were involved with drugs, and attempting

---

9. As one court has suggested, to require property owners to take all possible steps "would result in the dangerous precedent of making property owners in drug-infested neighborhoods into substitute police forces." *United States v. All Right, Title & Interest in Property Known as 710 Main St.,* 753 F.Supp. 121, 125 (S.D.N.Y.1990)

(failure of bar owner to use electromagnetic buzzer lock to screen patrons, to personally supervise bar, or to hire second employee to screen patrons and monitor bar does not defeat claim to innocent ownership where owner did take significant steps to prevent drug activity).

to keep the front door locked despite the traffic of her grandchildren in and out of their home. The court concludes, from a totality of the circumstances, that Gantt took all reasonable steps that a person of her abilities could be expected to take and is therefore entitled to retain her property as an "innocent owner." *See, e.g., United States v. Property Identified as 908 T Street, N.W.,* 770 F.Supp. 697, 703 (D.D.C. 1991) (claimant who nailed windows shut, put locks on doors, and kicked drug-addicted children out of home had taken sufficient steps).

## ON MOTION FOR STAY OF EXECUTION OF JUDGMENT

Previously in this civil forfeiture action, the court found in favor of claimant Gussie Gantt and ordered that she be permitted to reclaim possession of her home, located at 3855 April Street. This cause is currently before the court on a motion filed by the United States seeking a stay of execution of that judgment. For the reasons that follow, the court finds that the motion is due to be granted, subject to certain conditions.

Under Rule 62(a) of the Federal Rules of Civil Procedure, a judgment issued by a district court is automatically stayed for a period of ten days after its entry. If a party, including the government, appeals the district court decision, that party may obtain an additional stay pending resolution of the appeal. Fed.R.Civ.P. Rule 62(d). When the appellant is the United States, no bond is required to obtain the additional stay. Fed.R.Civ.P. Rule 62(e).

In this case, the government seeks a stay of execution of the court's judgment of July 20, 1992, in order to preserve the court's jurisdiction over the action for purposes of the appeal. Because this civil forfeiture is strictly an *in rem* action, the court's continued jurisdiction over the ac-

tion is entirely dependent on the court's "control" over the subject property. *United States v. One Lear Jet, Serial No. 35A–280,* 836 F.2d 1571 (11th Cir.) (en banc), *cert. denied,* 487 U.S. 1204, 108 S.Ct. 2844, 101 L.Ed.2d 881 (1988).* The Eleventh Circuit Court of Appeals has held that this basic rule applies regardless of whether it is personal or real property at stake. *One Lear Jet, supra* (real property); *United States v. Certain Real & Personal Property,* 943 F.2d 1292, 1295 (11th Cir.1991) (holding that *Lear Jet* ruling applies equally to real property). Sale of the property, or removal of the *res* from the court's jurisdiction, divests the court of any further jurisdiction. *Certain Real & Personal Property,* 943 F.2d at 1295 (with regard to real property, "the question is not whether the property remains where the Court *could* with proper procedures exercise control over the property, but whether the Court currently has control of the property"). A stay of execution is therefore necessary to prevent the sale or destruction of the property and thus preserve the court's jurisdiction.

The "property" at issue in this case is Gantt's home at 3855 April Street. Gantt has been unable to live in her house since April 1992, when the government first seized it. During this period, the unoccupied house has suffered from vandalism and neglect. Gantt desires to return to her home and contends that her return is necessary to prevent any further deterioration. The court agrees and concludes that, pending resolution of any appeal, Gantt should be permitted to return to her home. In order to ensure that the property is preserved, however, the court will subject Gantt's occupancy to certain conditions.

Accordingly, for the above reasons, it is hereby ORDERED that the motion for stay filed by the United States on July 27, 1992, is hereby granted and that execution of the judgment issued July 20, 1992, is stayed

* Although not all circuits agree, the Eleventh Circuit Court of Appeals has held that the court does not have in personam jurisdiction in an *in rem* proceeding. *United States v. Certain Real & Personal Property,* 943 F.2d at 1294–95; *but cf.*

*United States v. $95,945.18 in U.S. Currency,* 913 F.2d 1106, 1109 (4th Cir.1990) (holding that court retained *in personam* jurisdiction over government even though money had been released into U.S. Treasury).

pending resolution of the appeal in this matter or, if no appeal is filed, until the expiration of the time for filing notice of an appeal under Rule 4(a) of the Federal Rules of Appellate Procedure.

It is further ORDERED that claimant Gussie Gantt may occupy the defendant property, 3855 April Street, during the period of time for which the execution of the July 20, 1992, judgment is stayed, this period of occupancy to be subject to the following conditions:

1. Plaintiff Gantt shall not encumber or transfer any title or ownership to the property.

2. She shall make timely payments to the appropriate institutions on all current and continuous obligations regarding mortgage payments, home equity loan payments, utility payments, property tax payments, and other necessary obligations and if any such payments become delinquent she shall immediately cure such delinquency.

3. She shall maintain the entire property in the same condition and repair as existed as of the date of this order, normal wear and tear excepted. The term "maintain" shall include, but not be limited to, keeping the property free of hazard and structural defects; keeping all heating, air conditioning, plumbing, electrical, gas, oil, or other power facilities in good working condition and repair; keeping the property clean and performing such necessary sanitation and waste removal; keeping the property in good condition by providing for debris removal, lawn mowing, and other ordinary and necessary items of routine maintenance. However, this provision does not prevent her from improving the property.

4. She shall take all reasonable steps to prevent the illicit use of her property.

5. She shall provide the United States Marshals no less than thirty (30) days prior written notice of her intent to vacate the property.