**UNITED STATES of America,**
**Plaintiff,**

v.

**Koami KPOMASSIE, Defendant.**

**Crim. No. 03–20219.**

United States District Court,
W.D. Tennessee,
Western Division.

June 29, 2004.

PDA, J. Patten Brown, III, Randolph W. Alden, Federal Public Defender, Memphis, TN, for Defendant.

Linda N. Harris, Memphis, TN, for Plaintiff.

ORDER DENYING GOVERNMENT'S MOTION TO PROHIBIT USE OF NECESSITY DEFENSE AND ORDER ON GOVERNMENT'S MOTION FOR CLARIFICATION

DONALD, District Judge.

Before the Court are 1) the Government's motion to prohibit Koami Kpomassie's ("Defendant") use of a necessity defense at trial and 2) the Government's motion for clarification of the Court's Order of February 4, 2004. Defendant is charged with one count of violating 8 U.S.C. § 1227(a), by allegedly preventing and hampering his departure from the United States on June 6, 2003, pursuant to a final order of removal. The Court holds that a necessity defense is available to Defendant in this criminal proceeding and that Defendant has made a prima facie showing of evidence to support such a defense. Therefore, the Court denies the Government's motion to prohibit use of the necessity defense. The Court also clarifies its prior order below, pursuant to the Government's request.

## I. Factual Background[1]

Defendant is a citizen of the Togolese Republic ("Togo"), Africa. Togo is a former French colony that has been controlled since 1967 by a dictator named General Gnassingbe Eyadema. Togo is allegedly the site of serious human rights abuses, and it has been plagued by political unrest for many years.

Defendant entered the United States on July 5, 1995, with a visa issued by the United States Embassy in Lome, Togo. The visa authorized him to remain in the United States until January 4, 1996. Defendant came to the United States allegedly to escape death or persecution at the

hands of government forces in Togo due to his involvement in a political organization seeking to establish democratic elections and respect for human rights in Togo.

On October 20, 1997, Defendant filed an application for Asylum and Withholding of Deportation with the Immigration and Naturalization Service ("INS" or "DHS"). On April 9, 1998, he had a removal proceeding before an Immigration Judge ("IJ"). Defendant claimed that he was a "refugee" within the meaning of the Immigration and Naturalization Act based on past persecution and a well-grounded fear of persecution upon his return to Togo on account of his political affiliation. After receiving evidence and hearing testimony from Defendant, the IJ ordered Defendant removed from the United States. The IJ, in an oral decision, found Defendant's version of the facts to be not credible.

Defendant appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). On June 11, 2002, the BIA entered an order affirming the IJ's holding and agreeing with the IJ's decision that Defendant was not credible and that he was unable to establish that he suffered past persecution and had a well-grounded fear of future persecution in Togo. On February 23, 2003, Defendant filed a motion to reopen and stay his deportation, which the BIA denied.

On February 23, 2003, DHS officials escorted Defendant to an airplane in Memphis, Tennessee for deportation to Togo. Defendant allegedly began to yell and scream for someone to call the FBI because "they were going to kill him." Defendant was removed from the airplane and was given a copy of Form I–229— Warning for Failure to Depart. This incident is not the basis of the charge against Defendant in this action, but it is the sub-

---

1. The Court takes facts from the materials submitted on the motion to prohibit the ne-

cessity defense.

ject of the Court's February 4, 2004, Order.

On June 6, 2003, Defendant was placed on another airplane that was to transport him from Memphis to Lome, Togo, with stops on the way in Atlanta, Georgia and Paris, France. Defendant is accused of initiating a physical confrontation with DHS law enforcement officers, before take-off of this flight from Memphis, in order to prevent and hamper his departure from the United States. Defendant was subdued and removed from the airplane before its departure.

## II. Motion to Prohibit Use of Necessity Defense

Defendant claims that he will be subject to persecution on his return to Togo. He informed the Government that he intends to present a necessity defense to the charged crime based on his fear of persecution.

On February 18, 2004, the Government filed a motion to prohibit Defendant's use of a necessity defense at trial. The Government argues that 8 U.S.C. § 1252 precludes use of a necessity defense in this proceeding because the statute does not allow the Court to disturb the findings of the Attorney General without finding that they were manifestly contrary to law and an abuse of discretion, and the Court cannot make such a finding on this record. The Government also argues that, even if the Court permits a necessity defense, Defendant has not made a prima facie showing of the elements of the defense sufficient to allow its presentation to the jury.

Defendant responded on June 18, 2004. Defendant argues that he is not challenging the validity of the deportation order and therefore that the standards set forth in § 1252 do not apply. Defendant also argues that the findings of the IJ do not have preclusive effect on this Court in the criminal proceeding, and therefore that the

Court is not barred from making findings contrary to that of the IJ. Defendant finally claims that he has presented sufficient facts to make a prima facie showing of necessity.

The Court heard arguments of the parties in open court on June 25, 2004.

### A. Availability of Necessity Defense

▪ In his application for asylum, Defendant claimed that he was a refugee. Resolution of an application for asylum requires a two-step inquiry: first, whether the petitioner is a "refugee" within the meaning of the statute, and second, whether the petitioner merits a favorable exercise of discretion by the Attorney General. *Perkovic v. Immigration and Naturalization Serv.*, 33 F.3d 615, 620 (6th Cir.1994). The statute defines a "refugee" as

any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . .

8 U.S.C. § 1101(42)(A) (2004). An applicant has a well-founded fear of persecution if he can show that persecution is a reasonable possibility upon return to his country of origin. *Perkovic*, 33 F.3d at 620. A well-founded fear of persecution has both an objective and a subjective component: "an alien must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Id.* at 620–21.

▪ In the deportation hearing, the IJ specifically found that Defendant's story,

in which he claimed that he suffered past persecution in Togo and had a well-founded fear of persecution upon return there, was not credible. The IJ therefore denied his claim for refugee status. (Mot. in Limine & Mot. to Prohibit Def.'s Use of a Necessity Defense at Trial in Light of 8 U.S.C. 1252 ("Mot. in Limine"), Ex. C at 11–12.) The BIA affirmed, stating, "[w]e agree with the decision of Immigration Judge finding that the respondent was not credible and unable to establish that he suffered past persecution and has a well-founded fear of future persecution in Togo based upon his political opinion or other protect[ed] ground." (*Id.* at Ex. F.)

The Government claims that a successful use of the necessity defense in this criminal prosecution requires Defendant to show that he had a right to resist the DHS officers, which in turn requires Defendant to establish that the deportation order was invalid, thus allowing the Court or the jury to contradict the findings of the IJ and the BIA. The Government argues that a deportation order may not be overturned on judicial review without the Court finding that the Attorney General's findings and judgment, made through the IJ and the BIA, were manifestly contrary to the law and an abuse of discretion.

The Court acknowledges that judicial review of deportation orders requires that high standard of review. The statute states that "the Attorney General's discretionary judgment whether to grant relief under section 1158(a) of this title shall be conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D) (2004).

This separate criminal proceeding, however, is simply not a challenge to the validity of the deportation order, and so the Government's argument fails. The result of this criminal case, and any findings on a necessity defense, will not affect the prior deportation order. That order remains

part of a separate administrative proceeding, and any challenges that Defendant wishes to make to his deportation will have to be taken up in that other context, as Defendant is now doing. Therefore, even assuming that the Government is correct that a successful necessity defense involves making findings contradictory to those of the IJ and the BIA, any such contradictory findings will have no effect in the immigration proceedings, because the deportation order is not up for review before this Court. The Court therefore declines to prohibit Defendant from attempting to make out a necessity defense based on the Government's argument as to 12 U.S.C. § 1252.

The court in *United States v. Dagnachew*, 808 F.Supp. 1517 (D.Colo.1992), was confronted with an analogous situation. In *Dagnachew*, the defendant was ordered expelled from the United States and was placed in a holding facility for deportable individuals and others under INS control. *Id.* at 1519. Defendant escaped from the facility, was arrested, and was brought up on criminal charges for violating 18 U.S.C. § 751(a), which makes it a criminal offense to escape while being held for exclusion or expulsion under the immigration laws. *Id.* at 1519–20. Defendant raised the defense of duress and necessity, arguing that "he faced a choice of evils." Defendant claimed that he could either stay in the facility, be deported, and face persecution and possible execution upon his return to Ethiopia, or he could escape, face a possible criminal charge, and possibly remain at liberty for some period of time. *Id.* at 1520.

The district court addressed the issue of whether duress and necessity may be raised as a defense to the charge of escape from the Attorney General's custody, when such custody is for exclusion or expulsion under appropriate immigration laws. *Id.* at 1521. The court differentiated the situ-

ation from general escape, when the alleged duress is the conditions of confinement; in this context, "the ultimate act of deportation raises the alleged duress." *Id.* Following the direction of the United States Supreme Court that " 'the precise contours of the defenses of duress and necessity' must be reviewed as they arise," *id.* (citing *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980)), the court held that the duress and necessity defense was available to the defendant.

> This Court holds that the defense of duress and necessity may be raised by a defendant to an escape charge where the harm is deportation. Further, there must be a showing of persecution or personal harm that awaits the defendant if he or she is deported. There must also be a showing that no reasonable legal alternative exists to the escape.

*Id.*

The court made it clear that any findings in the criminal prosecution would not affect the defendant's deportation order:

> The present or future status of Defendant in regards to INS is not before this Court, only whether he should be found guilty of the charge of escape and whether he has raised a valid and sufficient defense of duress or necessity. Indeed, nothing this Court does will affect his deportability. That decision remains with INS.

*Id.* at 1522. With that differentiation, the court held that the defendant had raised a well-founded fear of persecution, as that term is used in asylum cases. The court's holding was contrary to the findings of the IJ, who denied the defendant's application for asylum. *Id.* at 1519, 1522. The court also explicitly found the defense witnesses to be believable, even though the administrative law judge in the deportation hearing chose not to believe Defendant's own testimony. *Id.* at 1522. The court went on to hold that the defendant had made a sufficient showing of the elements of a necessity defense. *Id.* at 1523.

This Court views the situation in *Dagnachew* to be instructive as to the situation here. Defendant is charged in a criminal proceeding separate from his deportation proceedings. Any findings or holdings made here will not affect his deportability, which is currently final, although Defendant is attempting to challenge it. The Court may thus make findings contrary to those of the IJ and the BIA without meeting the high standard of § 1252 for judicial review of orders of deportation. Thus, assuming that successful use of a necessity defense involves the Court or the jury making findings contrary to those of the IJ and the BIA, the immigration statutes do not bar such action. Accordingly, the Court refuses to prohibit Defendant from attempting to make out a necessity defense in this criminal case.[2]

---

2. The Court notes several cases refusing to hold that findings in immigration proceedings have a preclusive effect in criminal cases. *See United States v. Meza–Soria*, 935 F.2d 166 (9th Cir.1991) (refusing to collaterally estop defendant from offering evidence in criminal proceeding on alienage element of crime of unlawful reentry after deportation, even though prior deportation proceedings established defendant's alienage); *see also United States v. Ortiz–Lopez*, 24 F.3d 53 (9th Cir. 1994) (same). The Ninth Circuit pointed to the differing standards of proof in the two proceedings: the criminal case required the Government to prove each element of the crime beyond a reasonable doubt, while the civil immigration proceedings required only clear, convincing, and unequivocal evidence. *Meza–Soria*, 935 F.2d at 169. The Circuit Court stated, "the difference in standards of proof must preclude the use of civil proceeding findings to establish facts in a criminal proceeding." *Id.* The Court also distinguished criminal cases in which the defendant attempted to attack the validity of the deportation order directly. *Id.* at 170. Of

## B. Prima Facie Showing of Necessity Defense

■ Necessity is an affirmative defense, and the defendant must first make a prima facie showing to the Court that facts exist to support the defense. Whether there is sufficient evidence to submit the defense to the jury is a question of law. *See United States v. Jankowski,* 194 F.3d 878, 882 (8th Cir.1999); *United States v. Posada–Rios,* 158 F.3d 832, 873 (5th Cir. 1998); *United States v. Sarno,* 24 F.3d 618, 621 (4th Cir.1994) ("Whether an affirmative defense is established is a factual issue that is usually a function of the jury, and the trial court rarely rules on a defense as a matter of law. However, where there is insufficient evidence, as a matter of law, to support an element of the affirmative defense, the defendant can be precluded from presenting any evidence of duress to the jury or, if some evidence is already presented at trial, the court can refuse to instruct the jury on the duress defense."); *see also Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.").

■ To establish a necessity defense in the Sixth Circuit, a defendant must show that 1) he was under an unlawful and present, imminent, and impending threat, which induced a well-grounded apprehension of death or serious bodily injury; 2) he did not recklessly or negligently place himself in a situation in which it was probable that he would be forced to choose criminal conduct; 3) he had no reasonable legal alternative to violating the law or opportunities to refuse to do the criminal act and avoid the threatened harm; and 4) a direct causal relationship is reasonably anticipated between the crime and the avoidance of the threatened harm. *United States v. Milligan,* 17 F.3d 177, 181 (6th Cir.1994).

■ On the first prong, the Court finds the evidence sufficient to make a prima facie showing that Defendant was under an unlawful and imminent threat. A mere generalized fear of persecution is insufficient to meet the imminence or immediacy standard. *See United States v. Campbell,* 675 F.2d 815, 821 (6th Cir.1982) (holding defendants unable to meet immediacy requirement based on threats of future harm from gang members); *United States v. Sixty Acres,* 930 F.2d 857, 860–61 (11th Cir.1991) (generalized fear of harm is insufficient to meet immediacy requirement). The Government argues that Defendant cannot show that he was under any immediate or non-generalized threat, because his flight to Togo had stops in Atlanta and Paris, and because no Togolese government officials were present during Defendant's alleged commission of the crime. These arguments are unavailing. Defendant offers evidence, in an affidavit from Professor Benjamin N. Lawrance, tending to show the dangers of the political climate in Togo and the potential harm to Defendant on his return. Furthermore, Defendant alleges that he suf-

---

course, the standard that Defendant must meet to prove his proposed defense here is not beyond a reasonable doubt, but a preponderance of the evidence. *See United States v. Dicks,* 338 F.3d 1256, 1257 (11th Cir.2003) ("The defense of necessity or justification is an affirmative defense to some criminal statutes, and, if available, the defendant bears the burden of proving it by a preponderance of the evidence."). The reasoning of the Ninth Circuit is therefore not precisely on point. The Court, however, deems helpful to its holding the Ninth Circuit's differentiation of criminal and civil immigration hearings and of criminal cases in which a defendant does or does not attempt to attack directly a deportation order.

fered persecution in the past at the hands of government officials in Togo. The fact that Defendant had stops on his flight between Memphis and Togo or that Togolese officials were not physically on the airplane simply does not make those threats, or Defendant's fear of those threats, on the completion of his flight any less present. Truly, were Defendant to have begun his flight, in the custody of DHS officers, a ball would have been set in motion that would have ended inexorably in his return to Togo. That any persecution of or danger to Defendant was not physically present at the precise moment when he allegedly caused the disturbance leading to his removal from the airplane does not preclude a prima facie showing on this prong. *Cf. Dagnachew*, 808 F.Supp. at 1521 (holding that successful presentation of the necessity defense required the defendant to show persecution or personal harm awaiting the defendant upon deportation, thereby effectively replacing the imminence prong of the defense). Whether the evidence is sufficient to prove imminence is a question for the jury, as the Court cannot say as a matter of law that the unlawful threat to Defendant was not immediate.

 As to the second prong, the "analysis turns on whether the defendant had 'no alternative—either before or during the event—to avoid violating the law.' The defense of necessity is not applicable when one has a choice of several courses of action, unless defendants show they pursued their alternatives or such alternatives were foreclosed." *Milligan*, 17 F.3d at 181 (citations omitted) (quoting *United States v. Singleton*, 902 F.2d 471, 473 (6th Cir.1990)). The Government argues that Defendant cannot meet this standard because he could earlier have designated a country to go to other than Togo, but failed to do so, and because he could have appealed the BIA's decision, but failed to do so. Defendant argues that he had no

alternative because he had been forced onto the airplane by DHS officials. Although perhaps Defendant could have avoided this whole situation by taking other action in the past, the Court deems the two alternatives proposed by the Government to be sufficiently far in the past that they were not available alternatives to Defendant at the time surrounding his alleged crime. In addition, Defendant alleges that he never received notice that his appeal to the BIA was denied in June 2002. (Mot. in Limine, Ex. G at 1.) This indicates that he did not know of the need for further appeals at the time when they were available. He did, however, file a motion to reopen and stay his deportation in February 2003 (and has motions currently pending with the immigration courts), thus indicating that he pursued legal alternatives, even though he was unsuccessful in the attempt. (*Id.*, Ex. G, H, J.) In other words, by the time of his deportation, these proposed alternatives were "foreclosed." Defendant was in a situation in which he had been forced onto the airplane to Togo by DHS officials. There has been at least a prima facie showing that Defendant's creation of the alleged disturbance—his commission of the crime—was his only reasonable legal alternative. *Cf. Dagnachew*, 808 F.Supp. at 1523 ("The prosecution raised at trial the issue of other avenues of approach short of escape. Yet, Defendant was in custody. His appeal to BIA had been summarily dismissed. No notice was provided as to any right of appeal to the United States Court of Appeals. Defendant perceived that he had no legitimate legal remedy at the time.").

 On the third prong, the Government makes the same arguments as it did about Defendant's possible alternative conduct, and the Court again finds them unavailing. Defendant had not recklessly or

negligently put himself in a situation on the airplane where commission of the crime was probable. Rather, he was put on the airplane by DHS officials following an order of deportation. The Court cannot trace a course of conduct back from this event through the entirety of Defendant's experience with his immigration proceedings.

Finally, on the fourth prong, the Court finds a prima facie showing that a direct causal relationship was reasonably anticipated between the crime and the avoidance of the threatened harm. Causing a disturbance on an airplane, particularly in this time of heightened security, can be reasonably anticipated to result in the disturbing person's removal from the airplane, which, in Defendant's case, would result in his avoidance of a return to Togo.

Based on the foregoing, the Court finds that Defendant has made a prima facie showing of necessity, such that the Court will allow Defendant to present the defense to the jury. The Court cannot say as a matter of law that the evidence is insufficient. Whether the jury will find that the evidence meets Defendant's burden of proof on the defense is a separate question that is not within the province of this Court to decide.

The Court therefore denies the Government's motion to prohibit Defendant's use of a necessity defense at trial.

## III. Motion for Clarification

■ On February 4, 2004, this Court entered an Order granting Defendant's first motion in limine, which requested that the Court prohibit the Government from presenting "any evidence with respect to alleged prior instances of conduct which resulted in his removal from a Northwest Airlines flight." (Order, Docket # 36, at 1.) The Court found that such evidence was relevant, as it would tend to make the fact of Defendant's efforts to avoid removal more probable than not, by showing a pattern of conduct. The Court also found, however, that the prejudicial effect of admitting evidence concerning this prior act outweighed its probative effect. (*Id.* at 1–2.)

On March 4, 2004, the Government filed a motion for clarification of the Order. The Government attached as an exhibit a copy of the Form I–229—Warning for Failure to Depart that Defendant received on February 24, 2003, following his aborted departure from the United States on February 23, 2003. The Government requests clarification as to whether the Order also bars admission of this exhibit. The Government argues that the document is not "evidence of other crimes, wrongs, or acts" within the meaning of Federal Rule of Evidence 404(b), but that it is instead background evidence that is necessary to complete the story of the charged offense. The Government also argues that, even if the document is subject to Rule 404(b), it is not more prejudicial than probative. Defendant did not respond to this motion.

The Sixth Circuit recognizes that "background evidence," or *"res gestae,"* does not implicate Rule 404(b).[3] *United States v. Hardy,* 228 F.3d 745, 748 (6th Cir.2000) (holding that testimony as to alleged drug activity by defendant before date of charged conspiracy was not proper background evidence nor admissible under Rule 404(b)).

---

3. Rule 404(b) states, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . ." Fed.R.Evid. 404(b).

Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Id.* The Court disagrees with the Government's argument that the document is background evidence to the charged offense. The document has no connection to the charged offense in any of the above-listed ways, because it concerns an entirely separate act, the February 2003 failure to depart. While the warning may assist the Government in proving its case, the Government is quite able to "complete the story" of Defendant's ordered deportation and his failure to depart as scheduled in June 2003 without using this document. The crime charged here concerns the June 2003 incident, not the incident in February 2003. As such, the proffered document is subject to the requirements of Rule 404(b).

▇▇▇ As to the Government's argument that no prejudicial effect of the warning outweighs its probative value, and therefore it is not barred by Rule 403,[4] the Court refers to its prior Order. The Court already found that evidence of the prior act of failure to depart was overly prejudicial. The warning stands as direct evidence of the prior act, as it was a consequence of Defendant's failure to depart as ordered in February 2003. Had Defendant not failed to depart, he would not have received the warning. The Court therefore confirms its prior finding of a prejudicial effect and prohibits the admis-

sion of the Form I–229—Warning for Failure to Depart.

## IV. Conclusion

The Court holds that a necessity defense is available to Defendant in this criminal proceeding, even without a finding that the Attorney General's findings are manifestly contrary to the law and an abuse of discretion, because the results of this case will not affect the validity of Defendant's deportation order. The Court also holds that Defendant has made an adequate prima facie showing of the elements of a necessity defense, such that the evidence may be presented to the jury. The Court therefore **DENIES** the Government's motion to prohibit Defendant's use of a necessity defense at trial. On the Government's motion for clarification, the Court holds that the proffered exhibit—a copy of Form I–229—Warning for Failure to Depart—is **INADMISSIBLE** as more prejudicial than probative.

---

**4.** Rule 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R.Evid. 403.