[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 17, 2012
JOHN LEY
CLERK

No. 11-10597
Non-Argument Calendar

_____

D.C. Docket No. 0:10-cr-60295-WPD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

YUAN CHEN LING,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 17, 2012)

Before HULL, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Yuan Chen Ling ("Yuan") appeals her conviction under 18 U.S.C.

§ 1546(a), which prohibits, *inter alia*, knowingly possessing a fraudulent passport. On appeal, Yuan first argues the district court erred in denying her motion for a judgment of acquittal. More specifically, she contends the government's evidence was insufficient to satisfy either the *actus reus* or *mens rea* requirements of § 1546(a). Second, Yuan argues the district court improperly denied her request for a jury instruction on the defense of duress. In support, she claims the evidence established that she fled to the United States, via Italy, in order to escape an immediate threat of harm by the Chinese police.

I.

We review insufficient-evidence claims *de novo*, viewing the evidence in the light "most favorable to the verdict . . . and [making] all inferences and credibility determinations in favor of the verdict." United States v. Chirino-Alvarez, 615 F.3d 1344, 1346 (11th Cir. 2010) (citations and quotations omitted). We will uphold a jury's verdict if "a reasonable jury, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the government[,] could find the defendants guilty as charged beyond a reasonable doubt." United States v. Clay, 355 F.3d 1281, 1286 (11th Cir. 2004). Importantly, "[t]he evidence need not exclude every hypothesis of innocence or be completely inconsistent with every conclusion other than guilt because a jury may select among constructions of the evidence." United States v. Ramirez, 426 F.3d 1344, 1351 (11th Cir. 2005).

2

Pursuant to 18 U.S.C. § 1546(a), an individual commits a crime when he or she "knowingly . . . utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained . . . ." 18 U.S.C. § 1546(a). Notably, to secure a conviction based on a theory of possession, the government need not prove actual possession; constructive possession will suffice. United States v. Campa, 529 F.3d 980, 1003-04 (11th Cir. 2008). Constructive possession occurs where "the defendant exercises ownership, dominion, or control over [an] item or had the power and intent to exercise dominion or control." Id. at 1003. Correspondingly, the *mens rea* requirement of § 1546(a) is satisfied where the defendant "knowingly" engages in one of the acts prohibited by the statute. United States v. Polar, 369 F.3d 1248, 1252 (11th Cir. 2004).

Sufficient evidence established that Yuan was in either actual or constructive possession of the fraudulent Singaporean passport from the time she

3

received it in Italy to the time she was apprehended off the coast of Florida.[1]  Yuan testified that she received the fraudulent passport the day before she departed on the transatlantic voyage, and there was evidence that she personally presented the passport in order to board the cruise ship.   Moreover, even though the fraudulent passport was ultimately found in someone else's cabin,[2] Yuan admitted it belonged to her and testified that she planned to use it to gain entry to the United States upon arrival.

There was likewise sufficient evidence that Yuan knew the Singaporean passport bearing her name and photograph was counterfeit.  Yuan admitted that she learned the travel document was a Singaporean passport midway through her voyage to the United States, and that she knew that she was not a citizen of Singapore, but she chose not to report to authorities at that time.  Equally important, the government presented significant circumstantial evidence that Yuan knew the passport was fraudulent prior to that point.  Yuan had traveled with her Chinese passport and knew what it looked like.  She provided her Chinese

---

[1]    We note that, under the circumstances, the district court had jurisdiction to indict and convict Yuan, a foreign citizen, even where her illegal acts took place, at least in part, outside of the United States.  See Marino-Garcia v. Cassalins-Guzman, 679 F.2d 1373, 1381 & nn.13-14 (11th Cir. 1982) (discussing objective territorial and protective principles of international law and explaining how they operate to allow nations to assert extraterritorial jurisdiction with respect to enforcement of criminal law).

[2]    Yuan's fraudulent passport was discovered when United States Customs and Border Protection investigators were searching a cabin next to hers, which belonged to a suspected alien smuggler from Singapore.

4

passport and several photographs of herself to a man she met in Rome's Chinatown in exchange for a different passport to use to enter the United States. In addition, the evidence established that Yuan, along with four other Chinese nationals also traveling with counterfeit Singaporean passports, was being transported to the United States as part of a sophisticated smuggling operation, making it unlikely that she was unaware of the illegal nature of the operation. On this record, there was sufficient evidence to support Yuan's conviction. Accordingly, the district court did not err in denying her motion for a judgment of acquittal.

## II.

We review a district court's refusal to give a requested jury instruction for an abuse of discretion. United States v. Martinelli, 454 F.3d 1300, 1309 (11th Cir. 2006). The issue of whether the defense produced sufficient evidence to sustain a requested instruction is reviewed *de novo*. United States v. Calderon, 127 F.3d 1314, 1329 (11th Cir. 1997).

A criminal defendant has a right to a jury instruction on a theory of defense when the proposed instruction involves "a valid defense and there is some evidence at trial to support the instruction." United States v. Lanzon, 639 F.3d 1293, 1302 (11th Cir. 2011). Significantly, a defendant must demonstrate that the

defense "has some basis in the evidence."  United States v. Hedges, 912 F.2d 1397, 1405 (11th Cir. 1990).  "A trial judge's refusal to give a requested instruction will warrant a new trial only if (1) the requested instruction was substantively correct, (2) the court's charge to the jury did not cover the gist of the instruction, and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense."  United States v. Roberts, 308 F.3d 1147, 1153 (11th Cir. 2002).

In order to establish a coercion or duress defense, a defendant "must show that [s]he acted under an immediate threat of death or serious bodily injury, that [s]he had a well-grounded fear that the threat would be carried out, and that [s]he had no reasonable opportunity to escape or inform police."  United States v. Jones, 32 F.3d 1512, 1515 (11th Cir. 1994).  "The requirement of immediacy of the threat is a rigorous one" in which "fear of *future* bodily harm to one's self or to others will not suffice."  United States v. Sixty Acres in Etowah Cnty., 930 F.2d 857, 861 (11th Cir. 1991).  Moreover, "if the accused had a reasonable opportunity to avoid committing the illegal act without subjecting h[er]self to the threatened harm, or subsequently ignored a reasonable opportunity to escape the source of the compulsion, the defense of duress is no longer available."  Id.; see also United States v. Bailey, 444 U.S. 394, 410, 100 S. Ct. 624, 635 (1980) ("[I]f there was a

6

reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defense[] will fail.").

In the instant case, the district court did not abuse its discretion in denying Yuan's request for a duress jury instruction because there was no basis in the evidence for such an instruction. First, even assuming that Yuan had a well-grounded fear of suffering bodily injury at the hand of the Chinese government, she admitted that the threat was no longer immediate once she arrived in Italy. Further, the evidence showed that Yuan had a reasonable opportunity to avoid criminal activity by seeking assistance or asylum in Italy, where she remained for one to two months, but she did not do so. Nor did Yuan seek assistance or asylum in any of the other countries where the cruise ship stopped en route to the United States. There was no evidence to suggest that she was under duress at any point when boarding the vessel or during the voyage. Yuan even admitted that she could have informed authorities after realizing the passport was fraudulent, but chose not to because the vessel was already en route to the United States.

Accordingly, we affirm the conviction.

**AFFIRMED.**